## HAM *v.* GOODRICH, Adm'r of HAM.

An agreement to convey land in consideration of services to be rendered, is within the statute of frauds.

Upon a *quantum meruit* to recover for such services, the value of the land is not the fixed measure of damages, although such value is competent evidence to be considered by the jury upon the question of damages.

The benefits received from the land by the party rendering the services, may, upon the general issue to a *quantum meruit*, be applied in payment for the same, without filing any set-off to the plaintiff's demand.

Where the plaintiff, with his family, went to reside with the defendant's intestate upon the farm of the latter, under a verbal agreement between them that the farm should be conveyed or devised to the plaintiff— *Held*, 1st, that no action could be maintained upon the agreement; 2d, that upon a *quantum meruit* for the services rendered, the value of the farm was not the fixed measure of damages; but that the jury might take into consideration such value in making up their verdict; and, 3d, that the benefits derived from the farm by the plaintiff, and the income thereof, were also proper matters for the consideration of the jury in arriving at the conclusion how much the plaintiff ought to receive.

APPEAL from a commissioner's report on the estate of Robert Ham, represented as insolvent. The appellant filed a declaration in assumpsit, containing five counts. He alleged in the

1st count, That Robert Ham, January 1, 1826, in consideration that the plaintiff agreed to go with his family and reside with the deceased on his homestead farm, and take care of him, and cultivate the farm during his life, promised and agreed that he would give and convey the farm, by a good and sufficient deed, to the plaintiff, to hold in fee simple, from and after the death of the deceased; averred performance on the part of the plaintiff, and that the deceased died on the 15th of December, 1849, and did not give or convey the farm to the plaintiff.

2d count, That, for a like consideration, the deceased promised to devise the farm to the plaintiff, &c.

3d count, That in consideration that the plaintiff, at the request of the deceased, had resided with him, served him, and cultivated the farm from January 1, 1824, to December 15, 1849, the deceased on that day promised the plaintiff to give and convey the farm to him; averred performance by the plaintiff, and a breach by the deceased.

4th count, That on the first day of January, 1824, the deceased, in consideration that the plaintiff agreed to live, with his family, with the deceased, take care of him and serve him till his death, promised to pay him so much money, &c., and alleged that he deserved to have $5000.

The 5th count was in general *indebitatus assumpsit*, for the labor and services of the plaintiff, his family and servants, previous to December 15, 1849 — $5000.

Defence, the general issue and statute of limitations.

It appeared on trial that Robert Ham died on the 15th of December, 1849, at about the age of 84 years; that he then owned a farm in Portsmouth, containing about forty acres, and had other real estate and some personal property; that he left two sons, of whom the plaintiff was one, and three daughters, or their children; that his wife died in 1837, and that by her death he was left without any child or other relative residing with him; that soon after her death the plaintiff, with his family, which consisted of his wife and one child, went to reside with his father on the farm, and continued so to reside there until his father's death, having the general charge of the farm, paying the expenses of carrying it on, and receiving the profits; that the deceased during that time boarded and resided in the family of the plaintiff; that the general expenses of the family were borne by the plaintiff.

Evidence was introduced by the plaintiff that soon after the death of Robert Ham's wife, he sent messages to the plaintiff, desiring him to come with his family and reside with the deceased, and take care of him and the farm during his life, and promising, if he would, that he would

give him the farm; that the plaintiff was reluctant to go, and that the deceased was urgent to have him. The plaintiff also introduced evidence of numerous declarations and statements of Robert Ham, tending to show that he had given up the control and management of the farm to the plaintiff, and that he considered the farm as the plaintiff's, and that the plaintiff was to have the farm at his death.

There was contradictory evidence on this point, introduced by the defendant, and much evidence to show the habits of the deceased, the income of the farm, and the manner in which the deceased was taken care of and maintained by the plaintiff.

Evidence was also given by the plaintiff to show the value of the farm. The plaintiff contended that he resided with his father on a verbal agreement; that he was to take charge of the farm and cultivate it, to take care of his father, and board him during his life, and was to have the farm by deed or will afterwards; and that he had performed his part of the agreement; that the measure of his damages in this case would be the value of the farm.

The defendant maintained that the verbal agreement was for the plaintiff to reside with and take care of his father, carry on the farm, and take the net income in full compensation for what he did under the agreement.

The court left it to the jury to find what the agreement was, and instructed them that the plaintiff had not maintained his suit on the 1st, 2d and 3d counts of the declaration, because there was no evidence in writing to prove the agreement set out in any one of these counts:

That if the plaintiff resided with his father under a verbal agreement to carry on and cultivate the farm, bearing the expenses and receiving the income, during his father's life, and was to have the farm afterwards, and the agreement, being performed on the part of the plaintiff, was broken by the deceased, the plaintiff would be entitled to

recover on his 4th and 5th counts such sum as he deserved to have; that the measure of the plaintiff's damages would not be the value of the farm, and that no damages could be recovered for the breach of the verbal agreement; but that on the question of damages they might consider the evidence of the special agreement, and of the value of the land, as tending to show the circumstances under which the plaintiff went to reside with his father, and the value which the parties themselves set upon the services which the plaintiff was to render under the agreement; that they might take into account the age and habits of the deceased, and anything disagreeable to the plaintiff or his family in the manner of their living with the deceased; the reluctance of the plaintiff to make the agreement, and the urgency of his father to have him come and reside with him; that the agreement was only to be considered as evidence to satisfy the jury of the amount which the plaintiff ought to have for going to reside with his father, independent of its effect as a binding contract; that the jury would make the plaintiff whole for going to reside with his father, and for residing with him under the agreement, but could give him nothing for the breach of the agreement as a binding contract:

That if the plaintiff resided with his father under a verbal agreement that he was to take care of his father and the farm, and have the net income during his father's life, and have the farm afterwards, and the agreement was broken by the deceased, the benefit which he derived from residing on the farm and receiving the net income, might, on this appeal, be applied, as far as it would go, in payment for what he did under the agreement; and that he would be entitled to recover no more than such sum as he deserved to have, beyond what he received as he went along, in the income and profits of the farm:

That if the plaintiff performed the agreement on his part, his claim would not be barred by the statute of limit-

ations, as his action would not acrue until the agreement was broken by the deceased.

The jury found a verdict of $300 for the plaintiff, which the plaintiff moved to set aside.

*Emery* and *Hatch*, for the plaintiff.

*Hackett* and *Christie*, for the defendant.

EASTMAN, J. On the trial of this cause the plaintiff recovered a verdict for $300, which he now seeks to have set aside. The precise ground upon which this motion is founded is not stated, but we take it to be because the court did not instruct the jury that the measure of damages to which the plaintiff was entitled was the value of the farm ; and because, also, that the court did instruct the jury that the benefit which the plaintiff derived from residing on the farm and receiving the income might be applied in payment for what was done under the agreement. We discover nothing else in the case of which the plaintiff could complain.

It is manifest that there could be no recovery under the first, second and third counts. Our statute of frauds is as follows : "No action shall be maintained upon any contract for the sale of lands, unless the agreement upon which such action shall be brought, or some memorandum thereof, is in writing, and signed by the parties to be charged therewith, or by some other person thereunto lawfully authorized by writing." Rev. Stat., chap. 180, sec. 7. The agreement between the plaintiff and the defendant's intestate was for the alienation of the farm, and it was not in writing. It was, therefore, directly within the condemnation of the statute. No action could be maintained upon it, and nothing, of course, could be recovered for its breach.

As no action could be sustained upon the contract, it appears to us that it would be an evasion of the statute to hold that, under the general counts, the agreement fixed the rule by which the damages should be found.

 The jury were instructed by the court that they might take into consideration the agreement, and all the circumstances under which the plaintiff went to reside with his father; and, under the instructions, they could, had they seen fit, have given damages equal to the value of the farm. But for the court to have gone further, and said that the value of the farm must be the measure of damages — that the jury were controlled by that — would have been giving, in one respect, full effect to the agreement, and would have made it the foundation of the verdict.

The agreement was only evidence which the jury could consider, in connection with the other testimony, as showing the circumstances under which the services were performed, which were sought to be recovered under the general counts; and to give it a conclusive effect as fixing the damages would be to make it a binding contract, obligatory upon the parties, as much so as if it were in writing.

The recovery of the plaintiff being founded upon the general counts, and upon them alone, the instructions of the court that what he received from the farm as he went along might be applied in payment for his services, were correct. What did he reasonably deserve to have, under all the circumstances, was the question. The actual services performed by himself and family; the circumstances under which he went to reside there; the annoyance, if any, of the particular services rendered; the board of the defendant's intestate; the income of the farm received by the plaintiff, and the board of himself and family; all these matters, and others that might be suggested, were to be considered by the jury in deciding what the plaintiff was justly entitled to and should receive.

It was not necessary that there should have been any

set-off filed by the defendant. Payment is a good defence under the general issue; and the benefit which the plaintiff received from the farm was a proper matter for the jury to consider; not as a formal, legal set-off, but as a consideration that went to show what the plaintiff was entitled to recover on his *quantum meruit.* It is like the board of a servant who sues for his wages. On a *quantum meruit* the employer is not required to file a set-off of the items of board, but they may be considered by the jury as going to reduce the amount which the servant shall recover; as a payment which is made, as the services are rendered.

Looking simply at the facts stated in the case, the verdict would seem to be small, but we discover no legal ground for setting it aside, and there must be

*Judgment on the verdict.*