Belknap
No. 84-462

ESTATE OF LOUISE C. D. YOUNGE,
BY ITS EXECUTOR, BANK OF NEW ENGLAND, N.A.,
AND NICHOLAS L. CUCCI & a.

v.

JOHN G. HUYSMANS & a.

JOHN G. HUYSMANS & a.

v.

ESTATE OF LOUISE C. D. YOUNGE,
BY ITS EXECUTOR, BANK OF NEW ENGLAND, N.A.,
AND NICHOLAS L. CUCCI & a.

December 5, 1985

*Decker, Fitzgerald & Sessler*, of Laconia (*James N. Sessler* on the brief and orally), for Bank of New England, N.A.

*Wescott, Millham & Dyer*, of Laconia (*Steven M. Latici* on the brief and orally), for Nicholas L. and Carol A. Cucci.

*Sulloway, Hollis & Soden,* of Laconia (*John P. Chandler* on the brief and orally), for John G. and Carole M. Huysmans.

PER CURIAM. The issues on this appeal are whether writings between the parties evidenced a meeting of the minds sufficient to create a contract for the purchase and sale of real estate and whether the superior court correctly determined the remedies for breach of the contract. The Trial Court (*Cann,* J.) approved the recommendations of the Master (*Mayland H. Morse, Jr.,* Esq.) who (1) found that a contract existed between the parties and was breached, and awarded damages to the Huysmanses for aggravation and harassment in addition to costs, and (2) denied the Huysmanses' request for specific performance of the contract. Both the Bank of New England and the Huysmanses appeal, seeking reversal of the decision. We affirm in part, reverse in part, and remand for further findings on damages consistent with this opinion.

The Bank of New England (the Bank) is the duly appointed executor of the Estate of Louise C. D. Younge, which owned two tracts of real estate on Governor's Island in Gilford. Each lot was subject to the right of Governor's Island Winnipesaukee, Inc., and its successors to repurchase the property in the event of a proposed sale. On July 9, 1981, the Bank's predecessor began to attempt to sell both parcels of land.

John and Carole Huysmans were residents of Governor's Island. They learned of the availability of the Younge Estate property and dealt directly with the Bank, without the assistance of a real estate agent or an attorney. On August 10, 1981, John Huysmans submitted a written purchase and sale agreement to the Bank along with a check for $10,000. The initial offer was $160,000, which was increased to $170,000 following a conversation between Mr. Huysmans and the Bank's Assistant Trust Officer, Jeffrey D. Ross. This offer was increased by Mr. Huysmans to $172,000 after subsequent conversations with Mr. Ross. At the Bank's request, Mr. Huysmans confirmed the offer of $172,000 by a memo on August 22, 1981. The Bank subsequently took the Younge property off the market.

On August 31, 1981, the Bank, through Mr. Ross, mailed a letter containing the following to Mr. Huysmans:

> "This is a short note to confirm that we have accepted your offer of $172,000.00 for the Younge property on Governor's Island in Gilford, New Hampshire. We are in the process of drawing up a Purchase and Sale Agreement, which we will forward to you shortly."

The Bank instructed its attorney, Robert H. Hurd, Esq., to prepare

a purchase and sale agreement, and continued to hold the Huysmanses' $10,000 check, although it did not negotiate the check.

On September 8, 1981, the Huysmanses recorded the Bank's letter of August 31, 1981, in the Belknap County Registry of Deeds. They signed a purchase and sale agreement for the sale of their own property on the same date. On September 9, 1981, the Huysmanses met with Mr. Hurd, and requested that they receive two separate deeds to the Younge property and have the right of assignment. Near the end of October, the Huysmanses received a copy of the purchase and sale agreement drafted by attorney Hurd. Mr. Huysmans noted on the agreement various problems he had with it: the rights of the Huysmanses could not be assigned to others, no provision was made for transfer of the property in two deeds, and the agreement contained a "fiduciary clause" providing that the Bank was not required to sell to the Huysmanses at the stated price if a higher offer were received. Mr. Huysmans wrote a letter to the Bank on October 29, 1981, in which he stated his concern because the Bank had not followed through on commitments it had made in August regarding assignment of the Huysmanses' rights and transfer of the property in two deeds.

In November 1981, the Bank discovered that Mr. Huysmans had recorded its letter of August 31, 1981. The Bank advised the Huysmanses that it would not proceed with the agreement unless the letter was released from recording at the Registry of Deeds. On November 18th or 19th, Mr. Ross informed Mr. Hurd that "the deal was off," and the Bank returned the uncashed $10,000 deposit check to the Huysmanses on November 25, 1981. After November 1981, the Huysmanses made no further attempt to complete the purchase of the Younge property. The Bank placed the property back on the market. Between December 1981, and April 1982, the Bank repeatedly attempted to obtain releases from the Huysmanses to discharge the recorded letter. On April 8, 1982, the Huysmanses signed and delivered to Mr. Hurd an unwitnessed signed release.

In September 1982, the Bank sold the Younge property to the Cuccis, who took possession and made extensive and costly improvements. In October 1982, the Bank and the Cuccis filed a petition to quiet title, seeking to force the Huysmanses to execute releases of the letter recorded in the Belknap County Registry of Deeds. The Huysmanses answered, alleging that the Bank's August 31, 1981 letter constituted a binding contract between the parties which the Bank had breached, and requesting damages. The Huysmanses did not file a bill in equity for specific performance of the real estate contract until December 27, 1983. The two cases were then consolidated for trial by the superior court.

After a hearing, the master found that the Bank's August 31, 1981 letter to the Huysmanses, along with the tender of $10,000 by the Huysmanses to the Bank, constituted adequate evidence that a contract existed between the parties. The master found that the Bank had breached the contract and awarded $1,175 damages to the Huysmanses. In addition, the Huysmanses were awarded $15,000 in damages for aggravation and harassment due to the Bank's conduct.

The master determined that the release executed by the Huysmanses was the result of duress, and thus of no effect. The fact that they took no further steps either to set the release aside or to enforce the contract, coupled with the fact that good faith improvements were made to the property by the Cuccis, led the master to deny specific performance to the Huysmanses on the basis of laches. The master recommended that the Bank's letter of August 31, recorded by the Huysmanses, be removed to clear title to the Younge property, decreed to be owned solely by the Cuccis.

## I. *Meeting of the Minds*

The first issue before this court is whether the writings between the parties evidenced a meeting of the minds sufficient to constitute a contract. The master found that a contract existed between the parties. We agree.

"We will uphold a master's findings 'unless they are unsupported by the evidence or are erroneous as a matter of law.'" *Campo v. Maloney*, 122 N.H. 162, 168, 442 A.2d 997, 1001 (1982) (quoting *Summit Electric, Inc. v. Pepin Brothers Const., Inc.*, 121 N.H. 203, 206, 427 A.2d 505, 507 (1981)). A meeting of the minds must occur before a contract is formed. *Turcotte v. Griffin*, 120 N.H. 292, 294, 415 A.2d 668, 669 (1980). The intent of the parties is determined by an objective standard, and not by actual mental assent. *Kilroe v. Troast*, 117 N.H. 598, 600–01, 376 A.2d 131, 133 (1977). The writing is given the meaning which a reasonable person would attach to it. *Id.* In view of the evidence taken as a whole, the writings between the Bank and the Huysmanses constitute sufficient evidence to support the master's finding that a contract existed between the parties.

In order for a memorandum to constitute sufficient evidence of a contract for the sale of land, it must be in writing, signed by the party to be charged, and must identify the parties, state the price, and describe the land. *Cunningham v. Singer*, 111 N.H. 159, 160, 277 A.2d 318, 319 (1971). In *Cunningham*, this court held that a written memorandum signed by both the plaintiff and the defendant was sufficient evidence of a contract for the purchase of land; reasonable

certainty that a meeting of the minds occurred is all that is necessary to evidence a contract. *Id.* In the case before us, the Bank's August 31, 1981 letter explicitly accepts the Huysmanses' offer to buy the real estate, and the Bank accepted a check for $10,000 as a deposit from the Huysmanses. We may reasonably assume that the forthcoming purchase and sale agreement mentioned in the Bank's August 31 letter would supplement terms otherwise specified by the exchange of letters.

▮ Although the master did not acknowledge that the second sentence of the Bank's letter, which stated that a purchase and sale agreement would be forthcoming, created an ambiguity as to whether the letter created a valid contract, the record provides a basis on which any ambiguity could be resolved to find a contract between the parties. The purchase and sale agreement and $10,000 check originally sent by the Huysmanses, the Bank's letter of August 31, 1981, and the fact that the Bank took the property off the market, all combine to provide adequate evidence to support the master's finding that the minds of the parties had met.

II. *Specific Performance*

The second issue before us is whether the master was correct in finding that the Huysmanses' request for specific performance was barred by the doctrine of laches. We uphold the master's finding.

▮ Specific performance is ordinarily granted to enforce a contract for the sale of real property, unless circumstances make it inequitable or impossible to do so. *Continental Cablevision of N.H. v. Osgood Lodge*, 123 N.H. 215, 219, 459 A.2d 263, 266 (1983) (citing *Belrose v. Baker*, 121 N.H. 48, 50, 426 A.2d 454, 456 (1981)). Failure to act may create such inequity. The issue of laches is "a question of fact for the trier of fact." *North Bay Council, Inc. v. Grinnell*, 123 N.H. 321, 325, 461 A.2d 114, 116 (1983) (citing *Valhouli v. Coulouras*, 101 N.H. 320, 323, 142 A.2d 711, 713 (1958)). The question of whether or not laches bars a particular claim is determined not only by the length of time involved, but also by the inequity of permitting a cause of action because of a change in the conditions of the property or the parties involved. *Wood v. General Elec. Co.*, 119 N.H. 285, 289, 402 A.2d 155, 157 (1979) (citation omitted).

The Huysmanses made no attempt to enforce their agreement with the Bank after November 1981. In September 1982, the Cuccis purchased the Younge property and recorded their purchase. After they purchased the property, the Cuccis made extensive, good faith improvements at substantial expense. The Huysmanses made no claim for specific performance until December 1983. As full-time

residents of Governor's Island and interested potential purchasers of the Younge property, they knew or should have known of the open and visible improvements made by the Cuccis to the property.

■■■ The master found that the Huysmanses were induced to enter into a release by duress. We need not address this issue because the Huysmanses took no steps to set the release aside during the time they knew or should have known that the Bank had put the property back on the market. Unreasonable delay and prejudice to the opposing party are required for a finding of laches. *State Employees' Ass'n of N.H. v. Belknap County*, 122 N.H. 614, 622, 448 A.2d 969, 973 (1982) (citation omitted). The failure of the Huysmanses to bring their action for specific performance until two years after negotiations with the Bank had come to a standstill, and over a year after the Younge property was sold to the Cuccis, constitutes an unreasonable delay. This delay, coupled with the prejudice to the Cuccis that would result from a grant of specific performance, requires that we affirm the master's finding of laches and consequent denial of specific performance.

## III. *Damages*

The Bank appeals the master's award of $15,000 in damages to the Huysmanses for aggravation and harassment sustained by them as a consequence of the Bank's conduct. We reverse and remand.

The master's award does not provide us with an explanation of the way in which the master computed it. Although we do not require mathematical certainty in the computation of damage awards, here no evidence exists to support the amount of damages awarded by the master. *M. W. Goodell Const. Co. v. Monadnock Skating Club, Inc.*, 121 N.H. 320, 323–24, 429 A.2d 329, 331 (1981).

■■■ Damages for aggravation and harassment are damages for emotional distress. "[R]ecovery of damages for mental suffering and emotional distress is not generally permitted in actions arising out of breach of contract." *Crowley v. Global Realty, Inc.*, 124 N.H. 814, 817, 474 A.2d 1056, 1057 (1984); *Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. 607, 615, 392 A.2d 576, 581 (1978). Liberal compensatory damages, which include damages for mental suffering, will be awarded in tort actions, however, when the acts complained of were wanton, malicious, or oppressive. *See Vratsenes v. N.H. Auto, Inc.*, 112 N.H. 71, 73, 289 A.2d 66, 68 (1972). In *Crowley*, this court held that damages for family distress are permissible in a claim of intentional misrepresentation of fact in connection with the sale of a family home. The Huysmanses, however, did not bring an action in tort or allege and prove any wanton or malicious conduct

in the Bank's breach of the contract, and are not entitled to damages for emotional distress.

The Huysmanses nevertheless may be entitled to damages based upon the lost benefit of the bargain. "In breach of contract cases, the purpose of awarding damages is not merely to restore the plaintiff to his former position, but to give him the benefit of his bargain—to put him in the position he would have been in if the contract had been fulfilled." *M. W. Goodell, supra* at 322, 429 A.2d at 330 (citing *Emery v. Caledonia Sand and Gravel Co.*, 117 N.H. 441, 446, 374 A.2d 929, 933 (1977)). A liquidated damages clause was not a part of the contract between the Huysmanses and the Bank and, therefore, the master could have properly calculated a damage award based upon the benefit of the bargain. Thus, we remand on the issue of damages, with instructions to the master to elucidate the basis for any award in excess of $1,175.

*Affirmed in part; reversed in part; remanded.*

JOHNSON, J., did not sit.