Merrimack
No. 90-607

# THE PALAZZI CORPORATION

v.

# WALLACE E. STICKNEY, COMMISSIONER, NEW HAMPSHIRE DEPARTMENT OF TRANSPORTATION

October 30, 1992

*Alexander J. Kalinski*, of Manchester, by brief and orally, for the plaintiff.

*John P. Arnold*, attorney general (*Nicholas P. Cort*, assistant attorney general, on the brief and orally), for the defendant.

THAYER, J.   This case concerns a contract dispute between the plaintiff construction contractor, The Palazzi Corporation (Palazzi), and the defendant, Wallace E. Stickney, commissioner of the State Department of Transportation (the State). The State appeals the Superior Court's (*Dickson*, J.) order awarding over $400,000 in damages to Palazzi, arguing that the trial court erred in finding that the construction project at issue was an expensive "borrow" project and not a more economical "waste" project, as the State originally promised when it solicited bids for the project. The State also contends that, in awarding damages for Palazzi's cost of maintaining another contractor's haul road, the superior court erroneously neglected evidence that Palazzi waived any claim to such costs. Finally, the State asserts that the superior court relied on an ill-conceived formula to compute the damages related to the haul road maintenance and should have instead awarded damages only for those expenses that were contemporaneously recorded. For the reasons stated below, we vacate the court's awards and remand for further proceedings consistent with this opinion.

In 1982, Palazzi successfully bid on a State construction project (the "E" project) involving two sections of route 101, approximately seven miles apart. Between the two sections, and adjacent to the easterly one, was another State construction area known as the "D" project. The State required the "D" contractor to build and maintain a haul road across its project so that Palazzi could easily travel from

one "E" section to the other. Such travel was crucial to Palazzi's work, because the easterly section of the "E" project, which needed to be excavated down to a certain level, provided most of the fill required in the westerly section, which needed to be built up.

In soliciting bids for the "E" project, the State described it as a "waste" project, which meant that enough rock and other material could be found within its designated confines to supply all the fill demanded by the project. The opposite of a "waste" project is a "borrow" project, compelling the contractor to look off-site for the needed fill. To determine that the project would be a "waste" project, the State measured and examined the unexcavated rock on the construction sites, estimated how much volume the rock would occupy once it was excavated, and then compared that figure to the amount of fill needed to complete the project. As rock broken up occupies more space than rock in the ground, the State's computation necessarily included an "expansion factor" to calculate how much the unexcavated rock would increase in volume once it was cut out of the ground. Based on its analysis of the rock's various attributes, the State chose an expansion factor of thirty-five percent and concluded that there would be more than enough rock to satisfy the fill needs of the project.

Once construction began, another occasion arose to use an expansion factor. It became apparent that the "D" project contractor would not construct the haul road by the date agreed, threatening Palazzi's ability to transport fill from the easterly section of its project to the westerly section. After some negotiation, the "D" contractor and Palazzi agreed to a swap: Palazzi would let the "D" contractor take as much unexcavated fill as it needed from Palazzi's easterly section, and in exchange the "D" contractor would let Palazzi take an equivalent amount of excavated fill from the "D" contractor's "borrow" pits near Palazzi's westerly section, where the fill was needed. To ensure that no more fill was taken than given, the two contractors needed to measure and compare the rock being exchanged. But as Palazzi's rock was not yet excavated, and thus occupied a smaller volume than an equivalent amount of the "D" contractor's rock, an expansion factor was needed to make an adequate comparison. They agreed on twenty-four percent and proceeded with their respective construction projects.

The "D" contractor did eventually build the haul road over its construction site, but apparently did not maintain it properly. Palazzi took on the job of maintenance and notified the State of the problem on December 1, 1983. The State refused Palazzi's request for reim-

bursement of its maintenance costs, but asked its own engineer, Laurent Levesque, who later resigned from the department of transportation to work for Palazzi, to keep track of these expenses. Levesque partially complied: Palazzi kept contemporaneous account of the maintenance work for sixteen days, and Levesque copied Palazzi's figures into his State reports. At trial, testifying for Palazzi, Levesque stated that further record-keeping was impossible for him because the State did not provide needed accounting assistance.

After Palazzi completed its construction project, it sued the State for the costs of the haul road maintenance. Additionally, it claimed that the entire operation was in fact a "borrow" project, not a "waste" project, and sued the State for the cost of transporting the extra fill it alleged was needed to finish the project. After eight days of testimony and the introduction of over one hundred exhibits, the trial court accepted all of Palazzi's arguments and calculations and ruled in its favor. The State appealed, arguing that the evidence presented was insufficient to support the superior court's rulings and that the court erred as a matter of law.

█ The standard of review on a sufficiency of the evidence challenge is well-established: "If the findings can reasonably be made on all the evidence, they must stand. Our function in reviewing the trial court's findings is not to decide whether we would have found differently but to determine whether a reasonable person could find as did the trial judge." *Liberty Mut. Ins. Co. v. Custombilt, Inc.*, 128 N.H. 167, 170, 512 A.2d 1098, 1100 (1986) (quotation omitted). These words are especially appropriate in a case such as this, where over a dozen experts gave conflicting testimony on various significant factual issues. At the same time, however, we cannot let stand an obvious legal or mathematical error—such as the ones found here—under the guise of affirming a trial court's broad discretion.

I. *"Waste" vs. "Borrow"*

█ The problem presented by the "waste"/"borrow" issue is essentially a simple one. The project must be deemed a "waste" project if Palazzi *could* have gotten all of its required fill from its own project sites. Palazzi did not actually use all of its rock, but instead used some of its own and some of the "D" contractor's rock, and in so doing obtained all the fill it needed. Palazzi gave the rock it did not use to the "D" contractor in an exchange for the "D" contractor's rock. Thus, we must compare the rock traded in the swap. If Palazzi used no more of the "D" contractor's rock than the "D" contractor

took from Palazzi, then there was enough rock on Palazzi's sites to provide all the fill Palazzi needed, and the project was a "waste" project. The project was a "borrow" project if Palazzi took more rock from the "D" contractor than it gave.

Both Palazzi and the State acknowledge these basic principles, and the parties generally agree on the measurements taken of the rock exchanged in the swap. These figures, however, reveal that Palazzi's rock was measured while still unexcavated, while the "D" contractor's rock was measured after it had been broken apart. Palazzi advanced at trial—and the trial court accepted—a calculation that compared the volume of Palazzi's unexcavated rock (that the "D" contractor used), with the volume of the "D" contractor's *excavated* rock (that Palazzi used). No expansion factor was employed to account for the increase in volume that virtually all rock undergoes when it is excavated, even though Palazzi concedes the rock expanded by at least ten percent and perhaps as much as twenty percent. The State maintains that this is manifest error, and we agree. As the State put it, Palazzi and the superior court "subtracted apples from oranges." Some expansion factor must be used before these two volumes can be compared. Accordingly, we remand, and unless the parties stipulate to the expansion factor, the trial court shall determine the expansion factor of the rock and use that factor to decide whether the project was in fact a "borrow" project. If a "borrow" project, then the defendant is entitled to compensation for transportation costs.

## II. *Waiver of Haul Road Maintenance Costs*

The first question involving the haul road is whether Palazzi waived its claim to reimbursement for some of the costs it expended in maintaining the haul road. Palazzi contends that this issue is not properly before us because the State did not raise it during the trial below, but only in its motion for reconsideration. We have previously resolved this question in the State's favor and do not address it further. *See State v. Tselios*, 134 N.H. 405, 407, 593 A.2d 243, 245 (1991). However, as the plaintiff points out, this issue was raised for the first time in the defendant's motion for reconsideration, and we can find no evidence in the record on this issue. The trial court had the discretion to either not consider the issue or re-open the record and allow the parties to present evidence. Although the trial judge did not re-open the record, the exact basis for the court's denial of the motion for reconsideration is unclear. Accordingly, we remand this issue for further resolution.

III. *Calculation of Haul Road Maintenance Costs*

Assuming Palazzi did not waive its rights under the contract, we turn to the second question involving the haul road, which concerns the trial court's computation of the reimbursement owed Palazzi for the maintenance. The State argues that Palazzi deserves reimbursement only for the specific maintenance expenses Palazzi contemporaneously recorded. Although such accounting was performed for just sixteen days, the trial court accepted a formula advanced by Palazzi, and supposedly based on employee and equipment timecards, wage rates, and equipment rentals, which calculated reimbursement for each day that Palazzi used its graders and water trucks—equipment used to maintain haul roads. The timecards do not differentiate between work done on the "D" project haul road and maintenance performed on other haul roads. Instead, Palazzi used a formula, based on the comparative road lengths, to estimate what proportion of the overall haul road work could be attributable to work performed on the "D" project haul road. The trial court accepted this formula and incorporated the resulting figures into its award.

■ The documents upon which Palazzi grounded its calculation of haul road maintenance costs do not support its claim for damages or, consequently, the trial court's award. The documents consist of Palazzi's "Daily Extra Work Reports" and its daily timecards for labor and equipment. According to Levesque's testimony, the extra work reports are directly based on figures obtained from corresponding timecards. A comparison of the reports and timecards, however, reveals several instances where the figures do not match. Even worse, in at least sixteen cases, there are no timecards at all to provide the numbers appearing in the extra work reports. The trial court, in making its award, erroneously accepted Palazzi's claim for a certain amount of damages when none of the evidence presented adequately supported that claim.

■■ Palazzi cites *Peter Salvucci & Sons Inc. v. State*, 110 N.H. 136, 154, 268 A.2d 899, 911 (1970), for the proposition that "[t]he use of a formula . . . can be an acceptable method of proving damages." Such use of a formula, however, is not acceptable when it is based on unsupported numbers and when precise measurement of damages is possible, cf. *J.G. Watts Construction Company v. United States*, 355 F.2d 573, 581 (Ct. Cl. 1966) (where precise measurement is not possible, estimate can be used), particularly as the burden is generally on

the plaintiff to prove all aspects of damages, *see Robert E. Tardiff, Inc. v. Twin Oaks Realty Trust*, 130 N.H. 673, 679, 546 A.2d 1062, 1065 (1988). Palazzi's own records refute any notion of impossibility, as they reveal sixteen days of "precise measurement." The argument that *further* record-keeping was impossible is not supported by the evidence; Levesque's testimony on this matter was only that further record-keeping was impossible for *him*, a State employee—not that Palazzi was unable to keep track of its own work. Accordingly, we agree with the State that Palazzi should not be reimbursed for any costs not specifically accounted for in a contemporaneous report of the labor, equipment, and supplies used to maintain that particular segment of the haul road running across the "D" project.

For the foregoing reasons, we vacate the trial court's awards and remand for further proceedings consistent with this opinion. With regard to the issue of the haul road maintenance costs, we note that if the trial court finds that the State has already paid Palazzi for these expenses, the court shall take this payment into account in fashioning its award.

*Vacated and remanded.*

All concurred.