Hillsborough-northern judicial district
No. 94-315

GEORGE TSIATSIOS & a.

v.

JANICE TSIATSIOS, EXECUTRIX OF
THE ESTATE OF PAUL TSIATSIOS

August 22, 1995

*Douglas & Douglas,* of Concord (*Robert J. Rabuck* on the brief and orally), for the plaintiffs.

*Duffy and Laufer,* of Manchester (*Peter J. Duffy* on the brief, and *Daniel A. Laufer* orally), for the defendant.

JOHNSON, J. A jury found that the decedent, Paul Tsiatsios, orally promised to bequeath a farm and a motel to the plaintiffs, his children, in exchange for their promise to provide services without monetary compensation, and that his children performed their part of the bargain. The defendant, Janice Tsiatsios, executrix of the decedent's estate and the decedent's second wife, appeals the order of the Superior Court (*Perkins*, J.) requiring her to convey the farm to the decedent's children. We affirm.

The decedent married his first wife, Tina Tsiatsios, in 1940. The plaintiffs, George Tsiatsios, Charles Tsiatsios, Paula Tsiatsios Pierce, and John Tsiatsios, are adult children of their marriage. In 1958, the decedent and Tina Tsiatsios purchased a forty-acre farm in Hooksett. In 1960, they purchased a motel in Hampton Beach. Both properties were mortgaged. Shortly after purchasing the motel, the decedent lost his job. In June 1961, the decedent discussed his financial situation with his family. The decedent told them that he had two mortgages and that unless the family worked very hard, he would lose the farm and the motel. He promised his children that if they worked on the farm and at the motel without monetary compensation he would bequeath them the properties when he died. The children promised to do the work expected of them, and they fulfilled this promise during the ensuing years. The decedent's youngest child, John Tsiatsios, was born in 1967. After John's birth, the decedent promised that John, too, would receive a share of the family properties in exchange for unpaid services. Like his siblings, John Tsiatsios performed the work required to make the decedent's promise enforceable. The decedent repeated his promise regarding

the motel and farm on many occasions in John Tsiatsios' presence. No monetary compensation was ever paid by the decedent to his children for their work on the farm or at the motel.

In October 1980, Janice Tsiatsios began working in the Tsiatsios home as a nurse to Tina Tsiatsios, who had cancer. Tina Tsiatsios died three weeks later. Janice Tsiatsios then began working as the decedent's housekeeper, and she and the decedent soon became romantically involved. In 1982, Janice Tsiatsios divorced her husband, and the decedent executed a will in which he bequeathed $5,000 and a car to her and the remainder of his estate to his children. In 1988, the decedent had a kidney failure and began dialysis treatment. He also had a thoracic aneurysm, which was growing rapidly. Janice Tsiatsios and the decedent married in 1989. The marriage engendered tremendous hostility between Janice Tsiatsios and the decedent's four adult children.

In February 1990, the decedent devised a new will in which he named Janice Tsiatsios as executrix of his estate, and directed her to sell the farm and divide the proceeds of the sale among his four children. In March 1990, the decedent conveyed his title and interest in the motel to himself and Janice Tsiatsios as joint tenants with rights of survivorship. The decedent died on December 10, 1990.

On December 17, 1991, George Tsiatsios, Charles Tsiatsios, Paula Tsiatsios Pierce, and John Tsiatsios filed a writ of summons in which they sought recovery for the alleged breach of oral contract to devise real property and for the reasonable value of their services under a theory of quantum meruit. In 1993, they amended the writ to request specific performance as a remedy for the alleged breach of oral contract. Janice Tsiatsios did not object to this amendment.

After a four-day trial, a unanimous jury found by clear and convincing evidence, *see Humiston v. Bushnell*, 118 N.H. 759, 762, 394 A.2d 844, 846 (1978), that the decedent had made an oral promise to bequeath the farm and motel to his four children in return for their contributions to the family finances. On March 18, 1994, the superior court ordered Janice Tsiatsios, as executrix, to convey the farm, but not the motel, to the Tsiatsios children. Janice Tsiatsios then filed a motion for judgment notwithstanding the verdict or a new trial. The trial court denied the motion and she appealed.

Janice Tsiatsios argues that: (1) the decedent's oral promise is unenforceable because it violates the statute of frauds; (2) specific performance is an improper remedy under the circumstances of this case; (3) the doctrines of res judicata and collateral estoppel should

have prevented George Tsiatsios from relitigating his claims; (4) John Tsiatsios was not entitled to a remedy for breach of contract because he did not testify at trial; and (5) evidence regarding Janice Tsiatsios' relationship with the plaintiffs was irrelevant and unfairly prejudicial to her case and should not have been admitted. We reject all five arguments.

## I. Statute of Frauds

■ Janice Tsiatsios contends that the decedent's oral promise violated the statute of frauds. Whether an agreement complies with the statute of frauds is a mixed question of law and fact. *Cf. Halstead v. Murray*, 130 N.H. 560, 563, 547 A.2d 202, 203 (1988) (deciding whether statute of frauds prevented enforcement of contract under facts of the case). In our review, we will examine whether the evidence presented to the jury reasonably supports the jury's findings, and then whether the court properly applied the statute of frauds to those findings. *See Fleet Bank-N.H. v. Chain Constr. Corp.*, 138 N.H. 136, 139, 635 A.2d 1348, 1350 (1993).

■ Ordinarily, oral contracts to devise real property as compensation for personal services are unenforceable under the statute of frauds. *See* RSA 506:1 (1983); *Ham v. Goodrich*, 37 N.H. 185, 189 (1858). An oral contract to devise real property in exchange for services does not fall within the statute of frauds, however, "when some operating facts, such as fraud, part performance or other equitable considerations, are present." *Weale v. Massachusetts Gen. Housing Corp.*, 117 N.H. 428, 431, 374 A.2d 925, 928 (1977). The jury heard extensive testimony about the work performed by the Tsiatsios children. The record reveals that because of the Tsiatsios children's efforts, the decedent did not use hired help at the farm and rarely used hired help at the motel. According to Charles Tsiatsios, work on the farm and motel precluded him and his siblings from playing sports, joining clubs, going to movies, and attending dances. The Tsiatsios children spent their childhoods and most of their adult lives working on the properties. We conclude that the evidence amply supports the jury's finding that the Tsiatsios children had fully performed their promise under the oral agreement. Their performance removed the agreement from the statute of frauds. *See id.* We therefore uphold the trial court's determination that an enforceable contract existed despite the absence of a writing.

## II. Specific Performance

■ Janice Tsiatsios next argues that the trial court lacked authority to order specific performance because the plaintiffs could

have recovered the reasonable value of their services under a theory of quantum meruit. "In land contracts, specific performance will be decreed unless, in the discretion of the trial court, to do so would be inequitable or impossible." *Hawthorne Trust v. Maine Savings Bank*, 136 N.H. 533, 539, 618 A.2d 828, 832 (1992). We discern no inequity or impossibility in granting specific performance in the present case and therefore conclude that the trial court did not abuse its discretion.

## III. Res Judicata and Collateral Estoppel

On July 17, 1991, George Tsiatsios filed a "petition to quiet title and/or for constructive trust" against Janice Tsiatsios in her individual capacity. Based on this prior litigation, Janice Tsiatsios argues that the doctrines of res judicata and collateral estoppel should have precluded George Tsiatsios' claim for specific performance. This argument first appeared in Janice Tsiatsios' motion for judgment notwithstanding the verdict or new trial. Before Janice Tsiatsios filed her post-trial motion, the record contained only a single, fleeting reference to the prior litigation. Because Janice Tsiatsios first raised the issue after the jury trial had concluded, "[t]he trial court had the discretion to either not consider the issue or re-open the record and allow the parties to present evidence." *Palazzi Corp. v. Stickney, Comm'r*, 136 N.H. 250, 254, 619 A.2d 1001, 1003-04 (1992); *see Redlon Co. v. Corporation*, 91 N.H. 502, 506, 23 A.2d 370, 374 (1941) (absent changed circumstances, reconsideration is optional, not mandatory); *compare Cagan's Inc. v. N.H. Dept. of Rev. Admin.*, 128 N.H. 180, 184-85, 512 A.2d 411, 414 (1986) (trial court abused discretion by denying plaintiffs' request to further develop record when litigation was "extraordinarily complex" and plaintiffs previously were unaware that issue would arise) *with State v. Cote*, 129 N.H. 358, 370, 530 A.2d 775, 781-82 (1987) (trial court did not abuse discretion by denying defendant's motion for new trial when additional evidence offered by defendant was not "newly discovered"). The trial court determined that the argument was inappropriate because Janice Tsiatsios had not raised it at trial, and we find no abuse of discretion.

## IV. Plaintiff's Failure to Testify

Janice Tsiatsios next argues that John Tsiatsios was not entitled to specific performance because he did not testify and therefore could not establish the existence of a contract between him and the decedent. Specifically, she contends that the jury heard no evidence upon which it could find mutuality of assent. "[W]here there is a disputed question of fact as to the existence and terms of a contract

it is to be determined by the trier of facts, provided there is any evidence from which it could be found there was a contract between the parties." *Goodwin Railroad, Inc. v. State*, 128 N.H. 595, 604, 517 A.2d 823, 829-30 (1986) (quotation omitted).

 Offer, acceptance, and consideration are essential to contract formation. *See Chasan v. Village District of Eastman*, 128 N.H. 807, 815-16, 523 A.2d 16, 21-22 (1986). A valid offer "may propose the exchange of a promise for a performance . . . ." RESTATEMENT (SECOND) OF CONTRACTS § 24 comment *a* at 72 (1981). A promisee may accept such an offer by commencing performance. *See Panto v. Moore Business Forms, Inc.*, 130 N.H. 730, 735, 547 A.2d 260, 264 (1988). "Consideration . . . may consist either in a benefit to the promisor or a detriment to the promisee." *Chasan*, 128 N.H. at 816, 523 A.2d at 22 (citation omitted). In addition to offer, acceptance, and consideration, a valid contract requires that the parties assent to the same terms; that is, that they have a meeting of the minds. *Estate of Younge v. Huysmans*, 127 N.H. 461, 465, 506 A.2d 282, 284 (1985). In determining the actual understanding and intent of the parties, the trier of fact should consider the objective meaning of the expressed contract terms. *See id.*

Paula Tsiatsios Pierce testified that her brother John began working at the motel when he was very young and that he was never idle. She also testified that the decedent promised John that he, too, would receive a share of the family properties. According to Paula Tsiatsios Pierce, the agreement was "the philosophy under which the family ran," and that the decedent repeated his promise "all the time."

This evidence revealed the existence of a valid offer, acceptance, and consideration. John Tsiatsios manifested his acceptance of the decedent's offer by performing the tasks indicated in the offer, *see Panto*, 130 N.H. at 735, 547 A.2d at 264; his performance, which benefitted the decedent, constituted consideration, *see Chasan*, 128 N.H. at 816, 523 A.2d at 22.

 Janice Tsiatsios contends that John Tsiatsios' testimony was necessary to demonstrate his understanding of the contract terms. We disagree. "The intent of the parties is determined by an objective standard, and not by actual mental assent." *Estate of Younge*, 127 N.H. at 465, 506 A.2d at 284. From the unambiguous terms of the agreement, a reasonable jury could find mutual assent. *See id.* We conclude that the evidence sufficiently supported the jury's specific finding, pursuant to a special verdict form, of a valid

contract between John Tsiatsios and the decedent by clear and convincing evidence.

## V. Relevancy and Prejudicial Effect of Evidence

Finally, Janice Tsiatsios contends that the trial court erred by admitting irrelevant and unfairly prejudicial evidence of her poor relationship with the plaintiffs.

Janice Tsiatsios raised the question of whether the evidence was unfairly prejudicial for the first time in her post-trial motion. "[A] contemporaneous and specific objection is required to preserve an issue for appellate review in this court. If an issue is not properly preserved, the objection is deemed waived because the trial court is denied the opportunity to correct any error that it may have made." *State v. VanDerHeyden*, 136 N.H. 277, 282, 615 A.2d 1246, 1249 (1992) (quotations and citation omitted). Accordingly, we decline to consider this argument.

We need not assess the relevancy of evidence regarding the relationship between Janice Tsiatsios and the plaintiffs because any error in its admission was harmless. To conclude that an error is harmless, we must be convinced beyond a reasonable doubt that it did not affect the verdict. *State v. Sampson*, 132 N.H. 343, 348, 565 A.2d 1040, 1043 (1989).

During the cross-examination of Charles Tsiatsios, Janice Tsiatsios asked whether "there [came] a period when [he] and [the decedent] were not speaking" and whether "any of [their] battles [were] over the fact that [the decedent] was seeing, living with or married to Jan Tsiatsios." Janice Tsiatsios made her relevancy objection shortly thereafter, during the direct examination of Charles Tsiatsios' wife, Donna. Because Janice Tsiatsios had already admitted evidence of the poor relationship between her and the plaintiffs, we find the admission of additional evidence on that same subject to be harmless beyond a reasonable doubt.

Moreover, by admitting evidence regarding the relationship, Janice Tsiatsios waived her right to argue later that such evidence was irrelevant. *Cf. Sperl v. Sperl*, 119 N.H. 818, 821, 408 A.2d 422, 424 (1979) ("It is settled law that an objection to evidence is waived by one who subsequently introduces the same evidence.").

*Affirmed.*

All concurred.