Hillsborough-southern judicial district
No. 2002-456

DONALD P. CHISHOLM, JR.

v.

ULTIMA NASHUA INDUSTRIAL CORPORATION & a.

Argued: July 10, 2003
Opinion Issued: October 14, 2003

*Wiggin & Nourie, P.A.*, of Manchester (*Meredith P. Cook* and *Mary Ann Dempsey* on the brief, and *Ms. Cook* orally), for the plaintiff.

*Zahra Jenab & Company*, of North Vancouver, British Columbia, Canada (*Zahra Jenab* on the brief), and *Sulloway & Hollis, P.L.L.C.*, of Concord (*Eleanor H. MacLellan* on the brief and orally), for the defendants.

DUGGAN, J. The plaintiff, Donald P. Chisholm, Jr., brought an action in Superior Court (*Groff*, J.) against the defendants, his former employer, Ultima Nashua Industrial Corporation (Ultima), and its president, Anoosh Kia Manesh (Kia), alleging breach of contract and violation of RSA chapter 275. The jury found Ultima liable to Chisholm for severance pay in the amount of $36,058. In addition, the jury found Kia personally liable for $36,058 in liquidated damages. The defendants appeal the order of the superior court denying their motion to set aside the verdict. We affirm.

The jury could have found the following facts. Chisholm began working for Ultima in November 1998 as the director of operations. In late November 1998, Chisholm and Daniel Dumont, a prospective Ultima employee, met with Kam Mehrina, Kia's business partner and the president of Ultima, to discuss the terms of Chisholm's and Dumont's employment. At the direction of Mehrina, Chisholm typed and printed a document entitled "Proposed Employment Contract Outline — Donald P. Chisholm and Ultima Nashua Industrial Corp."

The proposed employment contract outline set forth a number of provisions regarding the terms of Chisholm's employment with Ultima. The first provision specified a yearly salary of $75,000. The second provision stated that health, dental and disability insurance would be provided by Ultima. The next provision, entitled "vacation," was crossed out and initialed by Mehrina. The fourth and fifth provisions concerned a 401(k) plan and bonuses but contained blanks regarding the amount of matching 401(k) contributions and the frequency of bonuses. The sixth and final provision stated:

> Severance package to include a six month period where salary and benefits are paid by Ultima Nashua Industrial, or if UNIC ceases to exist, by Canadian Communications Consortium or by some other means suitable to all parties. This package will be available if D. Chisholm is terminated, or leaves UNIC for any reason other than seeking other employment.

The document was signed by both Mehrina and Chisholm and was witnessed by Dumont. The document was not dated.

Kia testified that he was unaware of the proposed employment contract outline until one week after Chisholm left Ultima, and that Mehrina, who left the company in April or May of 1999, had no authority to execute or sign the document on behalf of Ultima.

In October 1999, Kia telephoned Chisholm, told him that Ultima needed to reduce costs, and asked him to take a $20,000 cut in pay. Kia and Chisholm agreed that this issue would be resolved prior to Chisholm's one year anniversary with Ultima. On November 4, 1999, two Ultima employees delivered a fax from Kia to Chisholm relieving him of his duties immediately. The fax stated that Ultima was "willing to offer [Chisholm] part time or project based contracts." In response, Chisholm sent a fax to Kia "invoking the terms of the severance package." Kia provided Chisholm with one week of severance pay from Ultima.

In May 2002, a two-day jury trial was held in which Chisholm claimed that Ultima and Kia were liable for breach of contract and liquidated

damages under RSA chapter 275. The jury returned a verdict against Ultima in the amount of $36,058 and against Kia in the amount of $36,058.

Upon reading the general verdict forms in chambers, the parties agreed that the jury intended to award a total verdict of $36,058 to Chisholm. After the parties left the courtroom, however, the court questioned the jury to confirm that it did not award liquidated damages. After some jurors responded that they did indeed award liquidated damages, the court asked the jury to return to the deliberation room and asked counsel for both parties to return to the courtroom. After conferring with counsel, the court brought the jury back into the courtroom and "inquired of the foreperson whether any of the verdicts represented severance pay and whether any of the verdicts represented liquidated damages." When the foreperson began to explain how the jury arrived at its verdict, the court asked the jury to return to the deliberation room. After consulting with counsel for a second time, the court sent the jury the following written question: "What damages are represented by each of your verdicts?" In response the jury wrote that: "Corporation verdict represents owed severance. Dr. Kia verdict represents 100% liquidated damages."

The defendants filed a motion to set aside the verdict. The trial court denied the defendants' motion and this appeal ensued.

The defendants make five arguments on appeal: (1) that the proposed employment contract outline was not an enforceable written employment agreement; (2) that since there was a legitimate dispute regarding whether there was an enforceable employment agreement, the trial court erred in permitting the jury to impose liquidated damages; (3) that the plaintiff waived his right to seek modification of the jury verdict; (4) that the plaintiff is estopped from challenging the verdicts; and (5) that the trial court erred when it made an *ex parte* inquiry of the jury. We address each argument in turn.

The defendants moved to set aside the verdict, arguing that as a matter of law, the proposed employment contract outline was not an enforceable contract. We will uphold a denial of a motion to set aside the verdict where there is sufficient evidence in the record to support the ruling. *Vachon v. New England Towing, Inc.*, 148 N.H. 429, 430 (2002). We will not set aside a jury verdict unless it is conclusively against the weight of the evidence or if it is the result of mistake, partiality or corruption. *Id.* "Conclusively against the weight of the evidence should be interpreted to mean that the verdict was one no reasonable jury could return." *Id.*

Offer, acceptance and consideration are essential to contract formation. *Tsiatsios v. Tsiatsios*, 140 N.H. 173, 178 (1995). "A valid offer may propose the exchange of a promise for a performance . . . ." *Id.* (quotation omitted).

An offer may be accepted by commencement of performance. *Id.* Consideration is present if there is either a benefit to the promisor or a detriment to the promisee. *Id.*

In addition, there must be a meeting of the minds in order to form a valid contract. *Id.* A meeting of the minds is present when the parties assent to the same terms. *Id.* This is analyzed under an objective standard. *Estate of Younge v. Huysmans*, 127 N.H. 461, 465 (1985).

We have held that "when there is a disputed question of fact as to the existence and terms of a contract it is to be determined by the trier of fact . . . ." *Maloney v. Company*, 98 N.H. 78, 82 (1953). Before such issues can be submitted to the jury, however, the trial court must determine whether there is "any evidence from which it could be found that there was a contract between the parties[.]" *Id.*

■ The record contains sufficient evidence upon which a trier of fact could find that the elements of contract formation were satisfied. The jury could have found that Ultima's promise to provide Chisholm with the benefits set forth in the proposed employment contract outline was an offer. Mehrani, the president of Ultima, signed the document. In addition, the jury could have found that in exchange for Ultima's promise, Chisholm provided consideration when he served as Ultima's director of operations for nearly one year. Ultima benefited from Chisholm's continued employment.

■ The defendants argue that the document is unenforceable because several of the terms are "not clear or specific or even complete." We have held that "while it is true that contracts . . . must be definite in order to be enforceable, the standard of definiteness is one of reasonable certainty and not 'pristine preciseness.'" *Phillips v. Verax Corp.*, 138 N.H. 240, 245 (1994). As we said in *Panto v. Moore Business Forms, Inc.*, 130 N.H. 730, 733 (1988), the important consideration is not whether the document is "a paradigm of draftsmanship," but whether "its general structure and specific provisions are reasonably clear." Here, while some of the contract terms are incomplete, it is reasonably clear that Chisholm agreed to work for Ultima in exchange for the annual salary and benefits set forth in the proposed employment contract outline. Thus, the trier of fact could have found that there was a valid contract.

We next address the defendants' argument that the trial court erred in permitting the jury to award liquidated damages under RSA chapter 275 because there was a legitimate dispute with regard to the existence of an enforceable contract. The defendants argue that as a matter of law, where there is a legitimate dispute regarding the existence of an enforceable

contract, an employer cannot be found to have acted willfully and without good cause. We disagree.

■ A jury may award liquidated damages when "an employer willfully and without good cause fails to pay an employee wages as required . . . ." RSA 275:44, IV (1999). We have construed "willfully and without good cause" as "a single phrase meaning voluntarily, with knowledge that the wages are owed and despite financial ability to pay them." *Ives v. Manchester Subaru, Inc.*, 126 N.H. 796, 802 (1985); *accord Richmond v. Hutchinson*, 149 N.H. 749, 751 (2003) (defining "willfully").

■ The defendants argue that because Kia disputed the validity of the proposed employment contract outline, liquidated damages are not available. More specifically, the defendants argue that because Kia disputed whether the document was enforceable, his actions cannot be characterized as willful. There is sufficient evidence in the record, however, to support a determination that Kia's conduct was willful and that he did not have a good faith belief that the document was unenforceable. The document in question was signed by the president of Ultima, Mehrani. Kia testified that Mehrani was not authorized to enter into the agreement with Chisholm. Kia also testified, however, that Mehrani was the acting president of Ultima and was authorized to sign documents on behalf of Ultima. In addition, Kia testified that he became aware of the document's existence one week after Chisholm left Ultima. Moreover, Chisholm sent Kia a fax "invoking the terms of the severance package." Kia refused to provide Chisholm with the severance pay even though the record contains no evidence that Ultima was financially unable to pay Chisholm. There was thus sufficient evidence in the record from which the jury could have determined that Kia acted willfully and without a good faith belief that the document was unenforceable.

The defendants next argue that the plaintiff waived his right to seek modification of the verdict because he failed to object to the use of two general verdict forms. In addition, the defendants argue that the plaintiff is estopped from challenging the verdicts because plaintiff's counsel agreed that the jury intended to award a total of $36,058 to Chisholm. Finally, the defendants argue that the trial court erred when it made an *ex parte* inquiry of the jury in order to clarify the two jury verdicts.

At the conclusion of deliberations, the jury returned two general verdict forms. The form for Ultima stated that the jury awarded damages in the amount of $36,058. Likewise, the verdict form for Kia stated that the jury awarded damages in the amount of $36,058. Outside of the presence of the jury, counsel and the court agreed that the jury intended to award a total

of $36,058 to Chisholm. Later, while thanking the jury, the trial court made a "statement to the jury to the effect that it was the Court's understanding that the jury had awarded no liquidated damages." When it appeared that the jury intended otherwise, the trial court immediately requested counsel for both parties to return to the courtroom. On the record, the trial court further questioned the jury with regard to liquidated damages after consulting with counsel.

■ The defendants' arguments that the plaintiff waived his right to modify the verdict and that he is estopped from challenging the verdict are without merit. We do not dispute that the plaintiff did not object to the general verdict forms and that in chambers, plaintiff's counsel agreed that the jury intended to award a total verdict of $36,058 to Chisholm. These findings, however, have no bearing on our conclusion because it was the trial court, not the plaintiff, that sought to clarify the verdicts by questioning the jury. Thus, we conclude that the plaintiff did not waive his right to modify or challenge the verdict.

Finally, we must analyze the propriety of the trial court's actions. We conclude that it was improper to initiate an inquiry of the jury outside of the presence of counsel. However, the trial court's actions in this case are distinguishable from other cases involving *ex parte* inquiries where we remanded for new trials. *See Corliss v. Mary Hitchcock Mem'l Hosp.*, 127 N.H. 225, 226 (1985); *State v. Castle*, 128 N.H. 649, 650 (1986). In *Corliss*, the trial court erred when it failed "to inquire of the jury on the record about its deliberations after hearing the incriminating statements of several jurors." *Corliss*, 127 N.H. at 226. Similarly, in *Castle*, the trial court erred when it had an *ex parte* conversation with a juror off the record prior to the beginning of jury deliberations and failed to take adequate steps to cure its error. *Castle*, 128 N.H. at 650.

■ Here, "[a]lthough the ex parte contact was improper, from the moment that the court realized that a serious issue might be involved . . . the court subsequently [took] adequate steps to protect the defendant[s'] rights." *Id.* at 653. More specifically, once it became clear that the jury intended to award liquidated damages, the trial court immediately asked the jury to return to the deliberation room and conducted further interrogation on the record and with the consent of counsel. Moreover, the trial court's *ex parte* inquiry took place after the jury had reached its verdict. Given that the trial court took immediate and adequate steps to

address its improper *ex parte* inquiry of the jury, we find that the trial court's actions cured any error.

*Affirmed.*

BROCK, C.J., and BRODERICK, NADEAU and DALIANIS, JJ., concurred.