Franklin District Court
No. 2005-328

GLADYS LEE DURGIN

v.

PILLSBURY LAKE WATER DISTRICT

Argued: May 10, 2006
Opinion Issued: August 1, 2006

*Cleveland, Waters and Bass, P.A.*, of Concord (*Mark D. Wiseman* on the brief and orally), for the plaintiff.

*Upton & Hatfield, LLP*, of Concord (*Matthew R. Serge* on the brief and orally), for the defendant.

BRODERICK, C.J. The plaintiff, Gladys Lee Durgin, appeals an order of the Franklin District Court (*Boynton*, J.) dismissing her implied contract claim against the defendant, Pillsbury Lake Water District. We affirm.

In July 2004, Durgin filed a breach of contract claim against the Water District claiming that it entered into an agreement with her to provide sufficient water to her residence. She sought damages, including reimbursement for the costs associated with the installment of an artesian well on her property. The trial court bifurcated the proceeding and conducted a bench trial, first hearing evidence on whether a contract existed between the parties. At the close of the plaintiff's case, the trial court granted the Water District's motion to dismiss. It ruled that the evidence failed to support "an implied private contract between the [parties] which [was] enforceable as [an] individual right of action," and that while "[g]overnmental obligations may exist ..., [they] are not obligations enforceable as a private, individual right of action ...." This appeal followed.

Before reviewing the evidence presented at trial, we turn first to the applicable standard of review. Although the procedural posture in this case involves a ruling by the trial court on the Water District's motion to dismiss, that motion was made after Durgin had presented her case. Concluding the evidentiary hearing, the trial court granted the Water District's motion and stated in its order: "I do not find that [Durgin's] evidence today supports an implied private contract." From the trial court order, it is unclear to us as to how the court treated the motion to dismiss, based upon our discussion of the two types of such motions in *Renovest Co. v. Hodges Development Corp.*, 135 N.H. 72, 76-78 (1991). The first type, used to assess the legal sufficiency of a case, would result in our review using "the familiar *prima facie* standard, taking all evidence introduced and resolving all conflicts in [Durgin's] favor." *Renovest*, 135 N.H. at 76. The second, requesting an expedited disposition of a case, would usually

result in the trial judge making findings of fact and using those facts to determine whether the plaintiff had established her case by a preponderance of the evidence. *Id.* at 76-78. "On appeal, we will not overrule these findings of fact, unless they are clearly erroneous, nor will we reverse the dismissal unless it is inconsistent with the findings or otherwise contrary to law." *Id.* at 78. We need not decide which particular standard, as illustrated in *Renovest*, is applicable here, as we determine that Durgin cannot prevail under either standard.

The following facts were undisputed. In June 1965, Durgin and her late husband purchased a home in Webster at the Pillsbury Lake Subdivision. Prior to their purchase, Town and Country Homes, Inc., the agent for the subdivision, provided the Durgins with a brochure that advertised the homes as having "piped year-round water." The Durgins paid an annual fee for their water supply. In 1968, the residents voted to establish the Water District for purposes of operating the water system, *see* RSA 52:1 (Supp. 2005), and Town and Country Homes conveyed the equipment for the water services to the Water District. The Durgins continued to pay an annual fee for their water. According to Durgin, if she failed to make payment, her water would be shut off.

Durgin was aware of State standards that required the Water District to supply water at a certain pressure. *See* N.H. ADMIN. RULES, Env-Ws 372.32(b) (effective Nov. 30, 2005; formerly Env-Ws 372.27(a)) ("At peak flow, pressure at the sill elevation of each lot or unit shall be at least 20 psi."). Indeed, the Water District acknowledges that it was obligated under the administrative rules, promulgated pursuant to the New Hampshire Safe Drinking Water Act, RSA chapter 485, to provide water at a minimum of twenty pounds per square inch at peak flow. *See* N.H. ADMIN. RULES, Env-Ws 301.02, 372.32(b). According to the evidence at trial, during a portion of 2003, water was supplied to Durgin's residence at a pressure below the required minimum and, at times, not provided at all for several days. Although the parties discussed the insufficient water supply, Durgin unilaterally discontinued her connection to the Water District's system and installed an artesian well on her property. She then sought reimbursement for her costs from the Water District. When it refused her request, she filed suit, claiming breach of an implied contract. At trial, Durgin maintained that she had an enforceable private contract with the Water District, based upon the conduct between them, that the obligation to provide an adequate supply of water was an implied term of the contract, and that at least as of 2003, the implied term required the Water District to provide water at twenty pounds of pressure per square inch. The trial court disagreed, ruling that she failed to present sufficient evidence to support the existence of such a contract.

On appeal, Durgin argues that the trial court erred in ruling that no implied contract was formed. She contends that the *quid pro quo* conduct between the parties in which she paid a fee in exchange for water service to her residence demonstrates the existence of an implied contract. She further relies upon language in a letter she received from the Water District in which it acknowledged its "obligations" to supply her with water. The Water District contends that the conduct between it and Durgin does not support a finding of an implied contract. Further, the Water District contends that as a matter of law no contract can be implied between it and private individuals in connection with its obligations to provide water to homeowners. We need not reach the latter contention because we conclude that the record before us supports the trial court's ruling that there was insufficient evidence to support the claimed existence of an implied contract. In addition, we conclude that Durgin has not shown that the trial court's findings were clearly erroneous or that its dismissal of her case was inconsistent with its finding or is otherwise contrary to law.

A valid, enforceable contract requires offer, acceptance, consideration, and a meeting of the minds. *Tsiatsios v. Tsiatsios*, 140 N.H. 173, 178 (1995). For a meeting of the minds to occur, the parties must assent to the same contractual terms. *Id.* That is, "[t]he parties must have the same understanding of the terms of the contract and must manifest an intention, supported by adequate consideration, to be bound by the contract." *Fleet Bank-NH v. Christy's Table*, 141 N.H. 285, 287-88 (1996). "Mere mental assent is not sufficient; a 'meeting of the minds' requires that the agreement be manifest," *id.*, based upon an objective standard, *Tsiatsios*, 140 N.H. at 178. "The question of whether a 'meeting of the minds' occurred is a factual question to be determined by the trier of fact," *Fleet Bank-NH*, 141 N.H. at 288, as is the issue of the existence of a contract, *Gulf Ins. Co. v. AMSCO*, 153 N.H. 28, 43 (2005). Although the conduct of the parties, apart from oral and written words, may establish an enforceable, implied-in-fact contract, *see Harrison v. Watson*, 116 N.H. 510, 511 (1976); *Morgenroth & Assoc's, Inc. v. Town of Tilton*, 121 N.H. 511, 514 (1981), subjective expectations "are insufficient to create an implied contract," *Short v. School Admin. Unit 16*, 136 N.H. 76, 82 (1992).

The Water District's obligation to provide Durgin's residence with water is unassailable. The Water District was established under RSA 52:1 to supply water to the subdivision residents, and the parties do not dispute that it was required to furnish water in accord with specific regulatory standards. *See* N.H. ADMIN. RULES, Env-Ws 372.32. The case before us, however, focuses exclusively upon whether the conduct of the parties as

reflected in the record gave rise to an implied-in-fact contract that Durgin could enforce.

■ We conclude that the plaintiff failed to demonstrate that the trial court erred in concluding that the evidence was insufficient to establish the existence of an implied contract. The mere fact that Durgin paid taxes and an annual water fee in exchange for water for her residence, without more, does not exhibit any intent of the Water District to enter into a private implied contract beyond or apart from its obligations to do so under law. *Tsiatsios*, 140 N.H. at 178 (meeting of minds required for creation of contract). The trial court expressly found that there was insufficient evidence to establish that the Water District "assumed [the] private agreements or obligations of the developer [of the Pillsbury Lake Subdivision]," and Durgin does not challenge this finding. Moreover, while the Water District acknowledged in correspondence its "obligations" to supply water to Durgin, such language reasonably indicates that the Water District was referencing its compliance with "state standards" and not private contractual duties. Specifically, it stated: "Because of the actions we have taken towards upgrades, and because water pressure at your house meets state standards, we see that we have met all *obligations*." (Emphasis added.) Accordingly, we affirm the trial court's ruling that no implied contract existed between the parties.

Finally, we note that the trial court order granted the Water District's motion to dismiss "without prejudice as to other possible enforcement/claims before Superior Court or Administrative Agencies of the State." We further note that in March 2004, the New Hampshire Department of Environmental Services (DES) determined in an action unrelated to the plaintiff's contract claim that the Water District had violated various administrative regulations, including the requirement that it provide water at a certain pressure. *See* N.H. ADMIN. RULES, Env-Ws 372.32(b). DES ordered the Water District to correct, within a prescribed time, the deficiencies that had led to the various violations. The DES order concluded:

> Please note that RSA 485:58 provides for administrative fines, civil penalties, and criminal penalties for the violations noted in this Order, as well as for failing to comply with this Order itself. The ... Water District remains obligated to comply with all applicable drinking water statutes and rules. DES will continue to monitor the ... Water District's compliance with applicable

requirements and will take appropriate action if additional violations are discovered.

*Affirmed.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.