Merrimack
No. 79-328

GEORGE E. TICE

v.

MELDRIM THOMSON, JR.,
GOVERNOR OF THE STATE OF NEW HAMPSHIRE

May 5, 1980

*Brown & Nixon P.A.*, of Manchester (*Randolph J. Reis* orally), for the plaintiff.

*Thomas D. Rath*, attorney general (*David W. Jordan*, assistant attorney general, orally), for the defendant.

BOIS, J.   This is a bill in equity seeking to force the defendant to comply with RSA 4:1 (Supp. 1979) regarding the plaintiff's tenure as a state official and alleging a violation of plaintiff's constitutional rights. The Trial Court (*Contas*, J.) granted the defendant's motion to dismiss for failure to state a cause of action, and reserved and transferred the plaintiff's exceptions. We affirm.

The defendant, as Governor of New Hampshire, appointed the plaintiff as Coordinator for Drug Abuse in 1973. The appointing order also established the Drug Abuse Prevention Advisory Council, whose members' term of office was specified as being "at the pleasure of the Governor." There was no such express limitation on the plaintiff's employment, either in the executive order or his letter of appointment.

On November 29, 1978, the plaintiff was subpoenaed to appear before a United States Grand Jury to testify as to his knowledge of alleged misuse of federal funds provided to the State for drug abuse prevention. Purportedly in response to publicized allegations of impropriety, the defendant, on December 5, 1978, requested the attorney general to take custody of all records in the plaintiff's office.

The plaintiff filed suit on December 6, 1978, in the United States District Court for the District of New Hampshire against the defendant and others, alleging that the seizures of the prior day had denied him his constitutional rights under color of state law. On December 7, 1978, the defendant discharged the plaintiff as Coordinator for Drug Abuse, stating no reasons for his dismissal. Plaintiff commenced this action on December 8, 1978, seeking an immediate hearing, an order enjoining the defendant from taking any action affecting plaintiff's tenure except in accordance with RSA 4:1 (Supp. 1979), and an order enjoining the defendant from obstructing the plaintiff's daily conduct of the office of drug abuse. The defendant's motion to dismiss was granted on December 22, 1978.

The first issue is whether the plaintiff was entitled to a hearing pursuant to RSA 4:1 (Supp. 1979), which provides in pertinent part as follows:

*Removal of Public Officers for Cause* (emphasis original)
*. . . no official of the state outside of the state classified
service* shall be discharged or removed except as
provided herein . . . . The attorney general, or appointing
authority of such official, may petition the governor and
council for his removal setting forth the grounds and
reasons therefor. Upon receipt of a petition, the governor
and council may request the secretary of state to assign
the matter to a retired justice . . . or . . . master . . . [to]
conduct a hearing in accordance with the rules of
superior court governing trials. . . . The report of the
justice or master shall be presented to the governor and
council for their order. . . . (Emphasis added.)

The plaintiff bases his claim to a hearing pursuant to RSA 4:1
(Supp. 1979) upon his characterization of his position as an
employee of an independent state agency, the office of drug abuse,
separate and distinct from the governor's office. He then argues
that because he clearly was not a classified employee, he must
necessarily come within the meaning of a "public official outside of
the state classified service." We disagree.

■ ■ The defendant issued Executive Order 73-5 pursuant to
his constitutional authority under the N.H. CONST. pt. 2, art. 41.
That order did not establish an agency independent of the
governor, but expressly "designated the Office of the Governor of
the State of New Hampshire as the single state agency"
responsible for coordinating all drug abuse programs. This case is
unlike *Jeannont v. New Hampshire Personnel Comm'n*, 116 N.H.
376, 359 A.2d 638 (1976), in which the governor had designated the
Office of Manpower Affairs as "the single state agency" to
administer manpower programs, and where the legislature had
appropriated monies to the Office of Manpower Affairs as an
entity distinct from the Office of the Governor. Here, no monies
had been appropriated specifically for drug abuse programs, and
the governor expressly retained control over those programs. The
position of Coordinator for Drug Abuse was not approved by the
legislature, did not have duties prescribed by the legislature, and
was not subject to legislative oversight. The plaintiff clearly was
not an employee of a state agency within the meaning of RSA 4:1
(Supp. 1979), either in fact or by analogy. Rather, he was an
employee of the Office of Governor hired pursuant to RSA 4:12,
and as such was not entitled to a RSA 4:1 hearing prior to

termination. We do not find the mere absence of the phrase "shall serve at the pleasure of the governor" in the executive order to be controlling.

The plaintiff's reliance upon *Opinion of the Justices,* 118 N.H. 582, 392 A.2d 125 (1978) for the proposition that the Coordinator for Drug Abuse is an independent agency is misplaced. There we held only that the Coordinator for Drug Abuse was a state agency within the meaning of RSA 17-G:4 (Supp. 1979), the exemption provisions of the Sunset Act. The essence of that decision was that the governor's office was plainly within the meaning of "[o]ffices or agencies required by provisions of the New Hampshire Constitution," and that the record did not support a finding that the coordination of drug abuse programs exceeded the scope of the governor's constitutional authority. To conclude therefrom that the Coordinator for Drug Abuse is an independent state agency under RSA 4:1 (Supp. 1979) is neither a necessary nor a valid corollary of that decision.

The next issue is whether the plaintiff's allegations of denial of due process rights were sufficient to withstand a motion to dismiss.

The plaintiff concedes that there is no property interest in public employment that automatically triggers a right to a hearing prior to termination. *See Colburn v. Personnel Comm'n,* 118 N.H. 60, 382 A.2d 907 (1978); *Bishop v. Wood,* 426 U.S. 341 (1976); *Board of Regents v. Roth,* 408 U.S. 564 (1972). He argues, however, that a hearing is required when there has been an allegation of a violation of freedom of speech, or when there has been an allegation of dissemination of false reports by the defendant surrounding that employee's dismissal. We do not address these arguments, as the plaintiff has not made those allegations upon which his arguments are premised. Furthermore, we find the allegations that the plaintiff did in fact plead to be insufficient to make out a claim requiring a hearing under the due process clause of the 14th amendment.

The plaintiff's petition alleges that the defendant "made allegations of impropriety and wrongdoing against the Plaintiff . . . and . . . reported said allegations to various news media," but does not allege that those reports were false. The United States Supreme Court addressed this problem in *Codd v. Velger,* 429 U.S. 624, 627–28 (1977), and stated therein:

> [T]he hearing required where a nontenured employee has been stigmatized in the course of a decision to terminate his employment is solely "to provide the person an opportunity to clear his name." If he does not challenge the substantial truth of the material in question, no hearing would afford a promise of achieving that result for him. . . . Only if the employer creates and disseminates a *false and defamatory* impression about the employee in connection with his termination is such a hearing required. (Emphasis added.)

■ The plaintiff's petition also alleges that "the aforementioned actions and inactions of the Defendant are contrary to law, retaliatory, in bad faith and in violation of the Plaintiff's civil and constitutional rights." This language, although it may be broad and sweeping, fails to allege a violation of freedom of speech, and is also insufficient on its face to make out a claim requiring a due process hearing. Nor was there an allegation that the plaintiff was discharged solely because of his political beliefs or party affiliations. *See Branti v. Finkel*, 100 S. Ct. 1287 (1980).

■ Accordingly, upon reviewing the specific language used and considering the complaint as a whole, we cannot say that the court erred in granting the defendant's motion to dismiss for failure to state a cause of action. We note that the plaintiff did not seek to amend his complaint, even though the general rule in this State is to allow liberal amendment of pleadings to cure defects of a technical nature. *See* RSA 514:8, :9; *V.H.S. Realty, Inc. v. City of Rochester*, 118 N.H. 778, 781, 394 A.2d 317, 319 (1978).

■ The plaintiff finally argues that his firing was unlawful under *Monge v. Beebe Rubber Company*, 114 N.H. 130, 316 A.2d 549 (1974), because it was motivated by bad faith. The majority of this court held in that case that a termination of employment at will that is motivated by bad faith or malice or based on retaliation is not in the best interest of the economic system or the public good and constitutes a breach of the employment contract. *Id.* at 133, 316 A.2d at 551. Although the plaintiff here has alleged retaliatory and bad faith conduct by the defendant, we find his reliance upon *Monge* misplaced. *Monge* involved an action in assumpsit to recover damages for breach of a private employment contract. Here, the plaintiff  does not even allege the existence of

an employment contract, or that he suffered damages as a result of a breach of such a contract by the defendant. Furthermore, the plaintiff was a public and not a private employee. He was a member of the governor's staff hired under RSA 4:12; he served at the pleasure of the governor and was subject to removal by the governor without cause. *Cf. Bennett v. Thomson*, 116 N.H. 453, 363 A.2d 187 (1976), *appeal dismissed*, 429 U.S. 1082 (1977) (employee hired under RSA 4:1 removed by Governor and Council for "the good of the department" where his insubordinate public remarks were deemed to impair employee's effectiveness).

We therefore affirm the trial court's decree.

■ In concluding, we observe that any claims which the plaintiff might have had to the position he held as Coordinator for Drug Abuse were rendered moot by Governor Hugh J. Gallen's Executive Order 79-1, which abolished that position and the Drug Abuse Prevention Advisory Council on January 5, 1979.

*Affirmed.*

DOUGLAS and KING, JJ., did not sit; the others concurred.