Hillsborough-northern judicial district
No. 2001-217

MICHAEL VACHON

v.

NEW ENGLAND TOWING, INC.

Argued: June 5, 2002
Opinion Issued: October 11, 2002

*Thomas Craig, P.A.*, of Manchester (*Thomas Craig* and *James E. Fiest* on the brief, and *Mr. Craig* orally), for the plaintiff.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Richard E. Mills* and *David P. Eby* on the brief, and *Mr. Eby* orally), for the defendant.

BROCK, C.J. The defendant, New England Towing, Inc., appeals from a jury verdict issued in Superior Court (*Brennan*, J.). The defendant argues that the trial court erred: (1) by denying the defendant's motions for non-suit and to set aside the verdict; and (2) when it instructed the jury on the

plaintiff's claim for lost earning capacity. We affirm in part, reverse in part, and remand.

The following facts were developed at trial. On July 12, 1997, the plaintiff, Michael Vachon, called the defendant to tow his broken-down vehicle. The defendant arrived at the scene with a flat bed tow truck, and the tow truck operator, Daniel Guillou, began to hoist the plaintiff's automobile onto the flat bed of the tow truck. To do this, Guillou had to extend the winch cable across the flat bed of the tow truck to the front of the plaintiff's automobile. To facilitate this process, Guillou jammed a mallet handle into the locking assembly of the winch, which allowed him to pull the cable without resistance to the front of the plaintiff's automobile. Guillou then attached the cable to the front of the plaintiff's vehicle, removed the mallet handle from the winch assembly and began to winch the plaintiff's automobile onto the tow truck's flat bed. At some point, the plaintiff's vehicle came loose and rolled off the back of the tow truck, striking the plaintiff.

The plaintiff brought suit, alleging that the defendant was negligent in failing to properly maintain, operate, and inspect the tow truck winch. Following trial, the jury returned a general plaintiff's verdict, awarding $50,000 in damages against the defendant.

We address first the defendant's contention that the trial court erred when it denied the defendant's motion for non-suit and motion to set aside the verdict. We will uphold a denial of these motions where there is sufficient evidence in the record to support the ruling. *Drop Anchor Realty Trust v. Hartford Fire Ins. Co.*, 126 N.H. 675, 678 (1985). We will not set aside a jury verdict unless it is "conclusively against the weight of the evidence or if it is the result of mistake, partiality, or corruption." *Quinn Bros. v. Whitehouse*, 144 N.H. 186, 190 (1999) (quotations omitted). "Conclusively against the weight of the evidence should be interpreted to mean that the verdict was one no reasonable jury could return." *Id.* (quotation omitted). Thus, we will not disturb the trial court's decisions denying the motions for non-suit and to set aside unless we conclude that no reasonable jury could have found the defendant liable.

A plaintiff claiming negligence must prove: (1) that the defendant owed the plaintiff a duty; (2) that the duty was breached; (3) that the plaintiff suffered an injury; and (4) that the defendant's breach was the proximate cause of the injury. *See Ronayne v. State*, 137 N.H. 281, 284 (1993).

At the close of evidence, the defendant moved for a non-suit, contending that the plaintiff failed to put forth sufficient evidence to prove that the

defendant breached a duty to the plaintiff, or that any such breach caused the accident. Denying the defendant's motion, the trial court stated:

> Well, I guess it is going to be up to the jury to decide. I'll tell you, it is about as close a call as I've made, but we've had—we did have the testimony of the officer who said that Mr. Guillou had said that he had problems with the winch.
>
> We have the fact that Mr. Guillou did not disclose the fact that he apparently had been using the handle on the hammer to release the winch so that he could more easily pull the cable back to the vehicle.
>
> We don't know that that could have caused the problem, but it is something that obviously Mr. Dubois believes was not acceptable, and we have the fact that something happened to cause this vehicle to ride back down off of the truck when it should have been secured and when it is obvious that Mr. Dubois' testing showed that that vehicle would not—didn't seem to have a problem with it, which leads one to believe that in light of what—I can't remember what Mr. Guillou said and the fact that he concealed the fact that he had been using the hammer.
>
> It is almost in a sense a res ipsa situation. It is not, but there's enough there so that I think the jury ought to hear it. . . . So, the motion [for non-suit] is denied.

After the jury returned a verdict for the plaintiff, the defendant renewed his objection in the form of a motion to set aside the verdict, which was denied.

■We conclude, for the reasons cited by the trial court, that a reasonable jury could conclude that the defendant breached a duty to the plaintiff, causing the plaintiff's injuries. Although Guillou was unavailable to testify at trial, Officer Tremblay testified that right after the accident, Guillou explained how it had occurred. Guillou used the handle of a mallet or hammer to release the winch, so that he could pull it freely to hook the cable onto the plaintiff's car. Guillou then began to pull the car up the ramp, but when the car reached the top of the ramp, Guillou "let go of the mechanism for the winch to bring it forward to bring it up the ramp and when he did the vehicle rolled down the ramp. There was no locking mechanism to take to stop the winch from going to unwind. Consequently, the vehicle was up about a twenty or thirty degree ramp and it basically it rolled down the ramp itself." The officer also testified that there were

several ways in which Guillou could have tested the winch to be sure that it would lock, and that right after the accident, Guillou admitted that he had been having problems with the winch.

The defendant's president, Edward Dubois, testified that Guillou, in reporting the accident to him, never mentioned that he had taken the handle of the hammer and jammed it into the winch. In response to the question, "As far as you are concerned, taking the handle of a hammer and jamming it into the winch is not a safe way of operating that winch," he answered, "Unacceptable as far as I am concerned."

We disagree with the defendant that there was no evidence to support either the conclusion that Guillou's use of the hammer to disengage the winch violated the standard of care or that it caused the plaintiff's injuries. While there was conflicting testimony regarding the propriety of using a hammer to disengage the winch, it was for the jury to resolve such conflicts.

Furthermore, we disagree with the defendant that expert testimony was required to demonstrate how the hammer could have caused the accident. As we have noted, the defendant's president testified that taking the hammer and jamming it into the winch as Guillou had was "unacceptable." Furthermore, Officer Tremblay testified that right after the accident Guillou explained that the car had rolled down the ramp when Guillou began to pull the car up the ramp, because the locking mechanism did not stop the winch from unwinding. Guillou also admitted to Officer Tremblay that he had been "having problems" with the winch. We believe that a reasonable jury could have inferred from this evidence, without the benefit of expert testimony, that Guillou's jamming the hammer into the winch had disengaged the locking mechanism, so that when Guillou attempted to pull the car onto the truck, the winch no longer functioned as it should have, and the car rolled off the truck into the plaintiff, causing injuries. *Kierstead v. Betley Chevrolet-Buick, Inc.*, 118 N.H. 493, 498 (1978) ("a finding upon the issue of causation may be made as an inference from evidentiary facts").

Furthermore, even if the jury were not persuaded that Guillou's actions in using the hammer to disengage the winch caused the accident, there was sufficient evidence to support the plaintiff's claim that the defendant was negligent in failing to maintain the winch. Guillou admitted that he had been having problems with the winch. From this and the other evidence presented, a reasonable jury could have concluded that the defendant had failed to correct problems with the winch and that the failure of the winch caused the accident.

We turn now to the defendant's argument that the trial court erred when it instructed the jury on the plaintiff's lost earning capacity claim. Prior to trial, the defendant moved *in limine* to exclude the plaintiff's lost earning capacity claim. The court denied the motion. At trial, the plaintiff argued that he had suffered a five percent whole person impairment which affected his work. In his closing argument to the jury, plaintiff's counsel suggested the following method to calculate lost earning capacity:

> Now, there's a lot of ways of figuring between yourselves as to how his earnings are for the rest of his life and how they are going to be affected by this injury. One way you could look at it is if he was making $12,000 a year, five percent is $500 a year times forty years, that's $20,000. That's one way you could do it.

Then, over the defendant's objection, the trial court instructed the jury that, in awarding damages, it should consider "[a]ny future wages that plaintiff probably would have earned if he had not been injured."

On appeal, the defendant argues that this charge misled the jury because it provided a theory of recovery that was unsupported by competent evidence. We agree.

"In actions of tort for personal injuries damages are recoverable for loss of capacity to earn ... measured by the amount of the wages which [the injured person] would have earned during the period of his disability had he not been injured." *Dowling v. Shattuck*, 91 N.H. 234, 242-43 (1941); *see also* RESTATEMENT (SECOND) OF TORTS § 906 comment c at 461 (1979). While there is no fixed rule to calculate the amount of damages to be recovered for loss or diminution of earning capacity, the trier of fact may consider evidence that tends to show that as a result of the injury, the plaintiff's ability to earn money in the future has been impaired or diminished. While the damages need not be proven with mathematical certainty, "most courts hold that in order to warrant a recovery for impairment of earning capacity in personal injury actions, the impairment of earning capacity must be shown with reasonable certainty or reasonable probability, and there must be evidence which will permit the jury to arrive at a pecuniary value of the loss." Annotation, *Sufficiency of Evidence, In Personal Injury Action, To Prove Impairment of Earning Capacity and to Warrant Instructions to Jury Thereon*, 18 A.L.R. 3D 88, 97 (1968).

While proof of a permanent injury may be considered, there must be at least some evidence that the physical injury caused, or resulted in, diminished earning power. *See McKnight v. General Motors Corp.*, 973

F.2d 1366, 1370 (7th Cir. 1992), *cert. denied*, 507 U.S. 915 (1993); *Gorniak v. National R.R. Passenger Corp.*, 889 F.2d 481, 484 (3d Cir. 1989). There is no basis for an instruction on a future impairment of earning capacity claim where there is evidence of a permanent injury, but no suggestion of how the injury would or could affect the plaintiff's power to earn money. *Dudley v. State Farm Mutual Automobile Ins. Co.*, 255 So. 2d 462, 467 (La. Ct. App. 1971); *Louisville & Jefferson Co. Bd. of Health v. Mulkins*, 445 S.W.2d 849, 853 (Ky. Ct. App. 1969).

The plaintiff did not present evidence in this case sufficient to show that his injuries would probably cause a loss of earning capacity. The plaintiff's expert witness, Dr. Berg, testified, citing the AMA GUIDELINES, that the plaintiff suffered a five percent whole person impairment. The plaintiff testified that he experienced pains when doing drywall, but that he had just "work[ed] through it." He also testified that he experienced pain when doing other kinds of work requiring heavy lifting. However, while Dr. Berg testified that the plaintiff's testimony regarding problems doing drywall work, general construction, and factory production work would be "consistent" with his injury, there was no medical or lay testimony supporting the conclusion that the plaintiff's capacity to earn a living doing drywall work, electrical work, construction work, and surveying and engineering work had diminished at all as a consequence of his injuries. Contrary to the assertion in the plaintiff's brief, he did not testify at trial that he could no longer do this kind of work because of the pain and discomfort it created in his back and groin.

Furthermore, while the plaintiff testified that shortly after the accident, he returned to school to pursue a degree in civil engineering, he did not testify that he returned to school because his injury prevented him from continuing to do the kind of work he had done prior to the accident. Moreover, Dr. Berg did not provide any testimony linking the plaintiff's injury to his current employment as a computer-assisted drafting operator, and the plaintiff himself testified that his injury does not interfere with his current work. Under these circumstances, we conclude that the plaintiff failed to prove that his injuries have caused a diminution in his ability to make a living. *McKnight*, 973 F.2d at 1370. It was therefore inappropriate to instruct the jury on the plaintiff's lost earning capacity claim.

The plaintiff suggests that even if the jury instruction was erroneous, we should nevertheless affirm the decision below. We disagree.

Whether a jury instruction requires reversal is a two-step inquiry: (1) was the error so substantial that it could have misled the jury

regarding the applicable law; and, if so, (2) can the appellee show that the error did not affect the outcome below. *Francoeur v. Piper*, 146 N.H. 525, 531-32 (2001). Regarding the first prong, as we have noted, the trial court's instruction suggested that the jury could award damages for loss of earning capacity, despite the fact that there was insufficient evidence to support such a claim. Thus, the instruction clearly misled the jury regarding the applicable law. Regarding the second prong, because the jury rendered a general verdict, it is impossible to determine whether the jury's award included damages for lost earning capacity. The plaintiff suggests that because the defendant did not request a special verdict form, his argument was not properly preserved for appeal. The plaintiff, however, cites no authority to support this proposition, and we have been unable to find any. Because we cannot say with certainty that the erroneous instruction had no effect on the jury's damage award, we reverse the damage award and remand for a new trial on damages. *See Welch v. Gonic Realty Trust Co.*, 128 N.H. 532, 537 (1986).

All issues raised by the defendant in his notice of appeal but not briefed are deemed waived. *State v. Mountjoy*, 142 N.H. 648, 652 (1998).

*Affirmed in part; reversed in part; remanded.*

NADEAU, DALIANIS and DUGGAN, JJ., concurred.