Hillsborough-northern judicial district
No. 2008-302

JAY A. MACKENZIE

v.

DANIEL LINEHAN & a.

Argued: February 12, 2009
Opinion Issued: April 3, 2009

*Preti, Flaherty, Beliveau & Pachios, PLLP*, of Concord (*Peter G. Callaghan* on the brief and orally), for the plaintiff.

*Getman, Stacey, Schulthess & Steere, P.A.*, of Bedford (*Stephen J. Schulthess* and *Jill A. DeMello* on the brief, and *Mr. Schulthess* orally), for defendant, Daniel Linehan, individually and as High Sheriff of Rockingham County.

DALIANIS, J. The plaintiff, Jay A. MacKenzie, appeals the Superior Court (*McGuire*, J.) order granting the motion for judgment notwithstanding the verdict (JNOV) or, alternatively, to set aside the verdict, filed by the defendants, Rockingham County Sheriff Daniel Linehan and Rockingham County. The trial court's decision overturned a $500,000 jury verdict award in favor of the plaintiff upon his claims for wrongful termination and false imprisonment. We affirm in part, reverse in part and remand.

The trial court recited the following facts in its order. The plaintiff was a deputy sheriff for Rockingham County. While off duty on the evening of April 23, 2004, the plaintiff went to a bar with Deputy Sheriff Christopher Stone. The plaintiff and Stone left the bar and, while in the parking lot, Stone stopped to urinate. A man, later identified as Anthony Kobelenz, approached the two deputies, demanding to use a cell phone. Kobelenz's face was bloody, he was not wearing a shirt, and he appeared mentally unstable. Kobelenz carried a bag, which the plaintiff and Stone feared might contain a gun. The plaintiff identified himself as a deputy sheriff and asked Kobelenz for identification. Kobelenz gave the plaintiff his identifi-

cation, but then became agitated and tackled the plaintiff to the ground. Stone pulled Kobelenz off of the plaintiff, and Kobelenz left the area without his bag. As he left, he took photographs of both deputies. The plaintiff and Stone put the bag in some bushes so that Kobelenz could retrieve it and left the scene without contacting the police.

Shortly thereafter, Kobelenz pulled a fire alarm to which the Exeter Fire Department and Stratham Police Department responded. He told a Stratham police officer that he had been assaulted by two plain-clothed police officers. Kobelenz was placed in protective custody and taken to jail. Approximately an hour later, he was released to a family member. The next day, he went to the Stratham Police Department with the photographs he had taken of the plaintiff and Stone the previous night. Kobelenz told Stratham officers that the photographs were of the two plain-clothed police officers who had assaulted him. The Stratham officers consulted with members of the Exeter Police Department, who identified the photographed men as the plaintiff and Stone. Stratham Police Chief Michael Daley called defendant Linehan, informed him of Kobelenz's allegations, and told them that he intended to ask the Attorney General to investigate the matter.

Defendant Linehan also began an internal investigation, as a result of which the plaintiff, but not Stone, was suspended. When questioned about the incident, the plaintiff refused to acknowledge that his conduct violated the Rockingham County Sheriff Department's rules and regulations.

On May 26, 2004, defendant Linehan held a hearing during which the plaintiff was fired for violating the Rockingham County Sheriff Department's "personal behavior rule," which provides, in pertinent part:

Each Department Member shall, while on or off duty, conduct themselves [sic] in a manner that will reflect credit on themselves [sic] and the Rockingham County [S]heriff 's Department. No employee shall engage in conduct which tends to bring the Department into disrepute or reflects discredit upon the employee as a member of the Department or which tends to impair the operation or efficiency of the Department or the employee. The conduct required includes but is in no sense limited to:

    1.    The civil and orderly performance of duties, at all times maintaining temper, patience and discretion.

    2.    Being scrupulously careful toward members of both sexes, and in such relations all employees are required to maintain a level of moral conduct in their personal and official affairs which is in keeping with the highest standards of the law enforce-

ment profession. Department Members shall not participate in any incident involving immoral conduct which impairs their ability to perform as employees of the Rockingham County Sheriff's Department or causes the Rockingham County Sheriff's Department to be brought into disrepute.

After defendant Linehan informed the plaintiff that he was fired, he blocked the door for thirty seconds and did not allow the plaintiff to leave the room so that he could provide him with further instructions.

The April 2004 incident was not the first disciplinary incident in the plaintiff's record; he was previously reprimanded for assaulting a taxicab driver while off duty and intoxicated, and twice reprimanded for disobeying orders.

The plaintiff sued the defendants for wrongful discharge and false imprisonment. These claims were tried to a jury. At the close of evidence, the defendants moved for a directed verdict upon which the court deferred ruling. The jury found in the plaintiff's favor and awarded him $500,000 in damages. Thereafter, the defendants renewed their motion for directed verdict and moved as well for JNOV and to set aside the jury verdict. The trial court granted the motion, and this appeal followed.

*I. Wrongful Discharge Claim*

The plaintiff first argues that the trial court erred by granting the defendants' motion for JNOV upon his wrongful discharge claim. A motion for JNOV based upon the sufficiency of the evidence presents a question of law. *Gowen v. Brothers*, 121 N.H. 377, 380 (1981). A party is entitled to JNOV based upon the sufficiency of the evidence only when the sole reasonable inference that may be drawn from the evidence, which must be viewed in the light most favorable to the nonmoving party, is so overwhelmingly in favor of the moving party that no contrary verdict could stand. *See Boynton v. Figueroa*, 154 N.H. 592, 602 (2006). In deciding whether to grant the motion, the trial court cannot weigh the evidence or inquire into the credibility of witnesses. *Id.* If the evidence adduced at trial is conflicting, or if several reasonable inferences may be drawn, the court must deny the motion. *Id.* Here, in reviewing the trial court's grant of a motion for JNOV, we objectively review the record to determine whether *any* rational trier of fact could have found the essential elements of the plaintiff's claims, and will reinstate the jury's verdict unless no rational trier of fact could have ruled in the plaintiff's favor, considering the evidence and all reasonable inferences therefrom in the light most favor-

able to the plaintiff. *See State v. Spinale*, 156 N.H. 456, 464 (2006); *State v. O'Neill*, 134 N.H. 182, 184 (1991) (holding that similar standard of review applies in criminal and civil cases).

∎ To prevail upon his wrongful discharge claim, the plaintiff had to establish that: (1) his termination was motivated by bad faith, retaliation or malice; and (2) that he was terminated for performing an act that public policy would encourage or for refusing to do something that public policy would condemn. *Lacasse v. Spaulding Youth Ctr.*, 154 N.H. 246, 248 (2006). In its instructions, the trial court gave the jury the following examples:

> As an example of a person doing some act which public policy encourages, let us say that an employee is discharged because he or she reports for Jury duty. If the employer acted with malice or in bad faith or any retaliation, and because the employee performed Jury duty, an act which public policy would encourage, the employee is entitled to seek damages for wrongful termination.

> As an example of a person refusing to do an act which public policy would condemn, let us say that an employee is requested by his employer to falsify records for the IRS. The employee refuses and is discharged for his refusal. Again, if the employer acted with malice and bad faith or in retaliation, the employee is entitled to recover his damages for wrongful termination because falsifying financial information for the IRS would certainly be an act which public policy would condemn.

The trial court concluded as a matter of law that the plaintiff failed to prove the second element of his wrongful discharge claim. While the court acknowledged that whether the discharge of an employee implicated a public policy is generally a question for the jury, the court reasoned, "[N]o rational fact finder could conclude that [the plaintiff] was fired for performing an act that public policy would encourage or for refusing to do something that public policy would condemn." *See Cloutier v. A & P Tea Co., Inc.*, 121 N.H. 915, 924 (1981); *Short v. School Admin. Unit 16*, 136 N.H. 76, 84 (1992).

The plaintiff argues that a rational fact finder reasonably could have found that defendant Linehan terminated him because he refused to concede that his off-duty conduct violated certain rules. His termination, he argues, implicates a public policy that favors truthfulness. As he states: "There was evidence from which the jury could reasonably have found that [he] was terminated for refusing to lie to save his job and that public policy supports such truthfulness." *See Cilley v. N.H. Ball Bearings, Inc.*, 128 N.H. 401, 406 (1986). While we agree that public policy generally supports truthfulness and that terminating an employee for refusing to lie to protect

his job could implicate this public policy, *see id.*, we disagree with the plaintiff that a rational fact finder reasonably could have found that he was terminated for this reason.

At trial, the plaintiff admitted to having engaged in the very conduct for which he was fired. He conceded that: (1) he and Stone had been out drinking; (2) they were approached by Kobelenz; (3) Kobelenz appeared bloody and mentally unstable: (4) Kobelenz angrily asked for the plaintiff's cell phone; (5) the plaintiff identified himself as a deputy sheriff; (6) the plaintiff asked Kobelenz for identification, asked him some other questions, and offered to help him; (7) Kobelenz accosted him; (8) after Stone pulled Kobelenz off of him, Kobelenz left the area; (9) the plaintiff and Stone both feared that Kobelenz's bag, which he had left behind, contained a gun; (10) he put Kobelenz's bag in the bushes; and (11) he and Stone both left the scene without calling the police. He also admitted that, in retrospect, he should have called the police about the incident. As he testified: "I didn't call the Stratham Police Department . . . . That was a judgment call and I regret that judgment call." Even so, the plaintiff testified that because he "entered [the] scene as a civilian and . . . left [the] scene as a civilian" and because the incident "had nothing to do with [his] job," he "did nothing wrong that night." The plaintiff testified that it was his impression that defendant Linehan wanted him to "go in his office and admit to everything that they were saying," and that defendant Linehan terminated him to punish him for refusing to "admit those things." Viewing the evidence in the light most favorable to the plaintiff, a rational juror could not have reasonably found that the plaintiff was, at any point, required to "lie" to protect his job.

To the extent that a rational fact finder could have reasonably found that the plaintiff was fired because he disagreed with defendant Linehan about whether his conduct violated the personal conduct rule, we agree with the trial court that this disagreement was not an act that public policy would protect. *See Short*, 136 N.H. at 85. Public policy does not protect "an employee's expression of disagreement with a management decision." *Id.*

Alternatively, the plaintiff asserts that a rational juror reasonably could have found that defendant Linehan terminated him for refusing to concede that certain other rules, which defendant Linehan had originally claimed the plaintiff violated, applied to off-duty conduct. His termination, he contends, implicated a public policy that supports an employee "protecting his off-duty time." *See Cloutier*, 121 N.H. at 923-24.

Even if we were to assume, without deciding, that there is a public policy that favors an employee "protecting his off-duty time," we conclude that a rational juror could not reasonably have determined that the plaintiff was terminated for this reason. The undisputed evidence was that the plaintiff was subject to the personal conduct rule, which he conceded applied to

off-duty conduct. Thus, to the extent that there is a public policy that favors an employee "protecting his off-duty time," it does not apply to deputy sheriffs who are governed by the personal conduct rule.

■ Because we conclude that the trial court did not err by granting the defendants' motion for JNOV upon the plaintiff's wrongful discharge claim, we need not address their contention that the public policy exception to the general rule that employees are employed at will does not apply to the plaintiff because he was a public employee whom the sheriff appointed to serve at his pleasure. *See* RSA 104:3 (2001); *Tice v. Thomson*, 120 N.H. 313, 318-19 (1980) (public employee appointed by Governor by statute could not state a claim for wrongful discharge in violation of public policy).

## II. False Imprisonment Claim

The plaintiff next argues that the trial court erred when it granted the defendants' motion for JNOV upon his false imprisonment claim. False imprisonment is the unlawful restraint of an individual's personal freedom. *Hickox v. J. B. Morin Agency, Inc.*, 110 N.H. 438, 442 (1970). "Any period of unlawful confinement, however brief, may result in liability for false imprisonment." 32 AM. JUR. 2D *False Imprisonment* § 15 (2007). "Confinement for an appreciable length of time, however short, . . . may be sufficient." *Id.* "Even if no 'appreciable' length of time elapses, the necessary element of false imprisonment is proven, if enough time elapses for the plaintiff to recognize the illegal restraint." *Id.* "An essential element of the offense is the absence of valid legal authority for the restraint imposed." *Welch v. Bergeron*, 115 N.H. 179, 181 (1975).

To prevail upon his claim for false imprisonment, the plaintiff had to show that: (1) defendant Linehan acted with the intent of confining him within boundaries fixed by defendant Linehan; (2) defendant Linehan's act directly or indirectly resulted in the plaintiff's confinement; (3) the plaintiff was conscious of or harmed by the confinement; and (4) defendant Linehan acted without legal authority. *See* RESTATEMENT (SECOND) OF TORTS § 35 (1965); *Welch*, 115 N.H. at 181.

In the instant case, the evidence, viewed in the light most favorable to the plaintiff, established that when he attempted to leave the hearing room, defendant Linehan stood in front of the door, with his hand on the doorknob, and prevented him from doing so. When the plaintiff asked defendant Linehan to move, defendant Linehan said something like: "[W]hat are you going to do shove me out of the way[?]" The plaintiff, feeling shocked that he was being held against his will, moved to cross the table and offered to shake the hands of the officers present. When none of the officers would shake his hand, the plaintiff walked back to the door and

once again asked defendant Linehan to move away from it. Defendant Linehan eventually moved away from the door, and the plaintiff left the room.

Based upon this evidence, a rational fact finder reasonably could have found for the plaintiff upon his false imprisonment claim. A rational juror reasonably could have found that defendant Linehan intended to confine the plaintiff in the hearing room, that his act of standing in front of the door with his hand on the knob resulted in the plaintiff's confinement to the room and that the plaintiff was conscious of being confined. A rational juror could also have found that defendant Linehan acted without legal authority. We are not aware of any legal authority that would have allowed defendant Linehan to block the door as he did.

The trial court ruled for the defendants upon the plaintiff's false imprisonment claim based upon its finding that the plaintiff was still an employee and subject to defendant Linehan's control when defendant Linehan physically blocked the door. Until the plaintiff was officially terminated, the court ruled that defendant Linehan was liable for the plaintiff's conduct and had the legal authority to block the door to ensure the plaintiff's continued attendance at the hearing. *See* RSA 104:28 (2001) (sheriff's liability for deputy's conduct continues until the sheriff records deputy's discharge); RSA 104:27 (2001).

The plaintiff argues that this was error, and we agree. Even if the plaintiff were still an employee and subject to defendant Linehan's supervision, this would not have given defendant Linehan the legal authority to detain him in the hearing room by physically blocking the door. While courts in other jurisdictions have held that an employer may "suggest, and even insist, that its employees perform certain tasks in certain locations at certain times," *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995), reasonably detain an employee suspected of theft, *see Fermino v. Fedco, Inc.*, 872 P.2d 559, 572 (Cal. 1994), or decline to terminate an investigative interview, *see Branan v. Mac Tools*, No. 03AP-1096, 2004 WL 2361568, at *8 (Ohio Ct. App. Oct. 21, 2004), the defendants have not cited, and we are unaware of, any court that has held that the mere fact of employment gives the employer the right to detain an employee in a disciplinary hearing room by physically blocking the door. Accordingly, we conclude that the trial court erred when it granted JNOV to the defendants upon the plaintiff's false imprisonment claim.

Because the jury in this case returned a general verdict, the remedy for this error is to reverse and remand. *See Welch v. Gonic Realty Trust Co.*, 128 N.H. 532, 537 (1986); *Vachon v. New England Towing*, 148 N.H. 429, 435 (2002). While some jurisdictions have adopted the "general verdict

rule," *see* 5 AM. JUR. 2D *Appellate Review* § 776 (2007), which states that "when the jury returns a general verdict involving two or more issues and its verdict is supported as to at least one issue, the verdict will not be reversed on appeal," *Todd v. South Carolina Farm Bureau Mut. Ins.*, 336 S.E.2d 472, 473-74 (S.C. 1985), New Hampshire has not done so. *See Welch*, 128 N.H. at 537. The rule in New Hampshire with respect to general verdicts is that when we are in doubt as to whether the jury would have found as it did if the error had not been committed, the case should be reversed. *Id.*; *see also Vachon*, 148 N.H. at 435 (where trial court's instructions to jury wrongly led it to believe that it could award damages for lost earning capacity and where jury returned general verdict, making it impossible to determine whether jury's damage award included such damages, damage award would be reversed and case would be remanded for new trial on damages). Here, because we cannot tell whether the jury would have found the defendants liable on the false imprisonment claim and/or awarded $500,000 for that claim alone, we reverse and remand for a new trial on that claim. *See Vachon*, 148 N.H. at 435.

> *Affirmed in part; reversed in part;*
> *and remanded.*

BRODERICK, C.J., and DUGGAN and HICKS, JJ., concurred.