NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
No. 2022-0154


MELISSA DONOVAN

v.

SOUTHERN NEW HAMPSHIRE UNIVERSITY

Argued: September 20, 2022
Opinion Issued: November 2, 2022


Lehmann Major List, PLLC, of Concord (Sean R. List on the brief and orally), for the plaintiff.

Sheehan Phinney Bass & Green, P.A., of Portsmouth (Christopher Cole and Megan Carrier on the brief, and Christopher Cole orally), for the defendant.


DONOVAN, J.  The plaintiff, Melissa Donovan, appeals from an order of the Superior Court (Nicolosi, J.) granting summary judgment in favor of the defendant, Southern New Hampshire University (SNHU), based upon the court's finding that no public policy considerations supported the plaintiff's wrongful termination claim.  On appeal, the plaintiff argues that the question as to whether public policy concerns support her wrongful termination claim, which alleges that she was constructively discharged as a result of her refusal to alter mathematics grades for two college students, should be resolved by a jury and not the trial court, as a matter of law.  We conclude that the court did

not err because complaints about the application of internal grading decisions by a private university do not implicate public policy considerations necessary to support a wrongful termination claim. Accordingly, we affirm.

## I. Facts

The following facts are supported by the summary judgment record. The plaintiff began working for SNHU in September 2011. From December 2016 until her resignation in November 2018, she served as Associate Dean of Faculty for Mathematics. In this role, her primary focus was oversight of faculty assignments and support for mathematics courses. She reported to Dr. Gwendolyn Britton, Executive Director of Science, Technology, Engineering, and Mathematics, and Dr. Susan McKenzie, a Senior Associate Dean. She also worked with Dr. David Sze, the Technical Program Facilitator for Mathematics.

In March 2018, at the request of the plaintiff and Dr. McKenzie, Dr. Sze reviewed a mathematics course, MAT 136, due to concerns about the course's design. That review revealed that instructors applied different grading schemes for the course, and that those differences were not being communicated to students. Specifically, some sections of MAT 136 employed a grading scheme that SNHU intended to phase out beginning in September 2018.

In July 2018, Dr. Sze emailed the plaintiff and Dr. McKenzie identifying two students from a semester of MAT 136 who received failing grades, but, given Dr. Sze's assessment of certain irregularities in grading schemes, "had a case for passing." Dr. McKenzie emailed the plaintiff asking her to change the grade for one of the students. The plaintiff replied: "To clarify, am I being asked, or told?" Dr. McKenzie responded that, after reviewing the student's work and grading schemes, both she and Dr. Britton believed the grade should be changed to reflect the student's actual work in the course. At some point later, Dr. McKenzie asked the plaintiff to modify the grade to passing for the other student identified by Dr. Sze.

Nonetheless, the plaintiff did not modify either of the students' grades. In meetings with both Dr. McKenzie and Dr. Britton, the plaintiff expressed her concerns that the grade change requests violated the school's grading policy and were unethical. In support of her position, the plaintiff presented to her supervisors the SNHU Whistleblower Policy, adopted by SNHU to encourage its faculty to raise concerns about "ethical conduct or violations of the University's policies." Ultimately, Dr. McKenzie submitted the grade change for the two students, which Dr. Britton and her supervisors later approved. In her claim for wrongful termination, the plaintiff alleges that Dr. McKenzie admonished her for declining to alter the grades and subsequently retaliated against her by engaging in conduct that created a hostile work environment.

In October 2018, SNHU placed the plaintiff on a performance improvement plan.  The plan identified numerous issues with the plaintiff's work performance, but did not reference the disagreement concerning the grade change requests.  In November 2018, the plaintiff resigned from her position at SNHU, stating in her resignation email that she felt compelled to resign due to a hostile work environment.  In August 2019, the plaintiff brought a complaint for wrongful termination against SNHU based upon a constructive discharge theory.  The plaintiff alleged that SNHU discharged her for declining to alter the two students' grades, which established a claim for wrongful termination because "[p]ublic policy supports academic integrity, consistency and equality in grading."  SNHU moved for summary judgment.

In February 2022, the trial court granted SNHU's motion for summary judgment.  The trial court determined that, even accepting the truth of the plaintiff's factual allegations, she "failed to establish the existence of a public policy that would support her refusal to alter grades in this case."  Relying upon authority from multiple jurisdictions, the trial court reasoned that "the determination of what grading policy to implement in a class, and whether exceptions to that policy should be made on a case-by-case basis, are matters of academic judgment that the Court will not second guess."  Further, although the plaintiff believed SNHU's decision to be unethical, the court concluded that "it remained an internal policy determination of a private university."  Accordingly, the court ruled that the plaintiff failed to establish a public policy necessary to support her wrongful termination claim as a matter of law and granted SNHU's motion for summary judgment.  The plaintiff filed a motion for reconsideration, which the court denied.  This appeal followed.

## II. Standard of Review

When reviewing a trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party.  See Peerless Ins. v. Vt. Mut. Ins. Co., 151 N.H. 71, 72 (2004).  If there is no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, the grant of summary judgment is proper.  Id.  We review the trial court's application of the law to the facts de novo.  Id.

## III. Analysis

To prevail upon her wrongful termination claim, the plaintiff had to establish that: (1) the employer terminated the employment out of bad faith, malice, or retaliation; and (2) the employer terminated the employment because the employee performed acts that public policy would encourage or because she refused to perform acts that public policy would condemn.  See Cloutier v. A. & P. Tea Co., Inc., 121 N.H. 915, 921-22 (1981).  As to the second prong, a plaintiff need not show a "strong and clear public policy," and a claim of public

policy may "be based on non-statutory policies." Id. at 922. "Although ordinarily the issue of whether a public policy exists is a question for the jury, at times the presence or absence of such a public policy is so clear that a court may rule on its existence as a matter of law . . . ." Short v. Admin. Unit 16, 136 N.H. 76, 84 (1992). This case presents such an occasion.

Here, the trial court ruled that the plaintiff failed to establish the second prong as a matter of law and granted summary judgment. The plaintiff argues that the trial court erred because whether a public policy supports the plaintiff's refusal to alter grades was not so clear that the court could decide that question as a matter of law. Specifically, the plaintiff argues that, in declining to alter the two students' grades, she acted "in conformity with public policy by safeguarding academic integrity and the system of merit-based student achievement expected by the public."

On appeal, however, the plaintiff maintains that "[t]his is not a case seeking to judicially overturn or undermine grading decisions of SNHU." "Rather, it is a case where a jury should decide if public policy supported the [p]laintiff raising issue with a grade change, internally, that she believed, in good faith, to be unethical and a violation of SNHU academic policy." (Emphasis omitted.) In other words, the plaintiff appears to argue that her wrongful termination claim is premised upon public policy because she acted in an effort to protect academic integrity and comply with SNHU's internal Whistleblower Policy by reporting, in good faith, conduct that she reasonably believed to be improper and unethical. We are unpersuaded.

As an initial matter, the plaintiff's complaint does not allege that SNHU terminated her because she acted as a whistleblower and complied with the university's Whistleblower Policy when she reported an alleged violation of SNHU's internal grading policy. In fact, the plaintiff's complaint fails to reference the Whistleblower Policy at all. Instead, the complaint alleges that:

> Public policy supported [the plaintiff] in challenging the instruction to arbitrarily change the grade of two students. Performing such a grade change would cause the two students to be graded unequally and inconsistently with all other students enrolled in the course. Public policy supports academic integrity, consistency and equality in grading, without preferential treatment provided to certain students simply based upon retaining enrollment.

Accordingly, we cannot read the plaintiff's complaint as advancing the argument she appears to advance on appeal.

Even if we construed her complaint to allege such a claim, we disagree with her argument that the trial court erred by failing to conclude that a

"reasonable jury could find that [her] actions were protected by public policy, particularly when the very actions she took were consistent with SNHU's Whistleblower and Grade Change Policies." We note that the plaintiff does not allege, nor argue on appeal, that her discharge violated the Whistleblowers' Protection Act, RSA 275-E:2 (2010), or that SNHU engaged in any illegal activity. Rather, the plaintiff appears to maintain that public policy protects her refusal to comply with her supervisor's directive because she acted in accordance with the university's internal grading and whistleblower policies. We disagree.

Public policy does not protect the plaintiff's refusal to comply with her employer's decision to allegedly depart from its own internal grading policy. See Melvin v. NextEra Energy Seabrook, LLC, No. CIV 09-CV-249-JD, 2010 W.L. 99095, at *3 (D.N.H. Jan. 6, 2010) (employee's disagreement with employer's selective enforcement of its policies or its management of his supervisory role does not implicate a public policy)(citing and quoting MacKenzie v. Linehan, 158 N.H. 476, 481 (2009) (holding that an employee's disagreement "about whether his conduct violated [his employer's] rule . . . [is] not an act that public policy would protect")); Short, 136 N.H. at 84 ("[A]n employee's expression of disagreement with a management decision is not an act protected by public policy."). The plaintiff posits that, because she complied with one internal policy — SNHU's Whistleblowers Policy — her refusal to comply with another internal policy — SNHU's alleged departure from its grading policy — constitutes an act protected by public policy. This argument is circular and insufficient as a matter of law to sustain a wrongful termination claim. Put simply, whether the plaintiff complied with the university's Whistleblower Policy has no bearing on whether public policy supports her conduct.

We next address the plaintiff's argument that public policy supports her refusal to "arbitrarily change the grades of two students" to protect "academic integrity, consistency and equality in grading, without preferential treatment" and that the trial court erred in finding that the plaintiff failed to establish such a public policy as a matter of law. This claim is premised upon a legal conclusion that a jury could find that public policy encourages the plaintiff's opposition to and reporting of the grade changes. Yet, the plaintiff has cited no authority that recognizes such a public policy, nor are we aware of any such authority. Accepting the plaintiff's premise would subject the internal grading decisions of a private university to the ethical considerations of a jury and contravene the well-established principle disfavoring judicial intervention in disputes involving academic standards. See, e.g., Jung v. George Washington University, 875 A.2d 95, 107-08 (D.C. Ct. App. 2005) (collecting cases). Indeed, in order to decide whether her alleged termination resulted from conduct that public policy supports, a jury would necessarily have to determine whether SNHU's internal grading system was "arbitrar[y]," "preferential," or violated

principles of "academic integrity [in] consistency and equality in grading" as alleged in the plaintiff's complaint. This result would require the jury to intervene in a dispute about academic standards.

"Courts have long recognized that matters of academic judgment are generally better left to the educational institutions than to the judiciary and have accorded great deference where such matters are at issue." Mangla v. Brown University, 135 F.3d 80, 84 (1st Cir. 1998). The rationale behind the principle of academic deference is that "courts are ill-equipped to review the largely subjective academic appraisals of the faculty." Mauriello v. U. of Med. & Dentistry of N.J., 781 F.2d 46, 50 (3d Cir. 1986). Therefore, as the Supreme Court has observed, "[p]lainly, [judges] may not override [the faculty's professional judgment] unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." Regents of University of Michigan v. Ewing, 474 U.S. 214, 225 (1985) (holding that "[w]hen judges are asked to review the substance of a genuinely academic decision . . . they should show great respect for the faculty's professional judgment").

In light of this well-established principle, we reject the plaintiff's argument and conclude that complaints about and reporting upon the application of internal grading decisions by a private university do not implicate public policy considerations necessary to support a wrongful termination claim. Therefore, even assuming that SNHU constructively discharged the plaintiff for refusing to alter two grades and raising ethical concerns about such action, any such discharge would be based upon her disagreement with an internal management decision devoid of any public policy considerations. See Short, 136 N.H. at 85; see also MacKenzie, 158 N.H. at 481.

## IV. Conclusion

For the foregoing reasons, we affirm the trial court's order granting summary judgment in favor of SNHU. Any issues that the plaintiff raised in her notice of appeal, but did not brief, are deemed waived. State v. Bazinet, 170 N.H. 680, 688 (2018).

Affirmed.

MACDONALD, C.J., and HICKS and BASSETT, JJ., concurred.

6