NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Coos

Case No. 2023-0022

Citation: Tremblay v. Bald, 2024 N.H. 6

GAIL C. TREMBLAY

v.

ALLAN BALD & a.

Argued: June 22, 2023
Opinion Issued: January 30, 2024

The Crisp Law Firm, PLLC, of Concord (Jack P. Crisp, Jr. on the brief and orally), for the plaintiff.

Devine, Millimet & Branch, Professional Association, of Manchester (William F. Gramer on the brief and orally), for the defendants.

MACDONALD, C.J.

[¶1] This interlocutory appeal involves the enforceability of agreements executed by the plaintiff, Gail C. Tremblay, and the decedent, Donald D. Bald, over the course of their long-term relationship. See Sup. Ct. R. 8. They shared the same household but were not married. The agreements provide for the plaintiff to receive certain property if she and the decedent were living together in the same household at the time of his death. The primary legal issue is

whether the agreements are supported by consideration. The plaintiff argues that cohabitation constitutes consideration. The defendants, the Estate of Donald D. Bald and Allan Bald, both in his individual capacity and as Administrator of the Estate, disagree. On cross-motions for summary judgment, the Superior Court (Bornstein, J.) denied the plaintiff's motion and granted the defendants' motion. We conclude that the agreements are enforceable contracts and, therefore, we reverse and remand.

I

[¶2] The following facts are undisputed. The plaintiff and the decedent were in a romantic relationship and lived together for more than ten years beginning in November 2009. They became engaged on December 31, 2009, but never married. They remained engaged and continued to live with each other until the decedent died intestate on July 26, 2020.

[¶3] At the time they met, the plaintiff was living at 19 Spruce Street and the decedent was living at 16 Spruce Street, in Gorham. As the relationship progressed, the plaintiff moved in with the decedent at 16 Spruce Street. In December 2009, the decedent purchased the plaintiff's property at 19 Spruce Street. On January 1, 2012, they executed a notarized agreement superseding a prior agreement from December 2009. The January 2012 agreement provides, in pertinent part:

> In the event that [the decedent] passes away and we are living together, [the plaintiff] will choose to keep, free and clear of any encumbrance, either the 16 Spruce St. property or the 19 Spruce St. property, including the contents of her choice; and the choice of two vehicles. This does not include [the decedent's] gun collection.

[¶4] They subsequently executed two more notarized agreements, each dated March 30, 2015. One of these agreements provides, in relevant part: "I, [the decedent], in the event of my death, leave to [the plaintiff] the 2014 Ford Mustang . . .; as long as we are still living together as an engaged couple." The other agreement provides, in relevant part:

> I, [the decedent], in the event of my death, leave to [the plaintiff] free and clear of any encumbrances, the property at 1 Marois Ave, Gorham, NH (including a garage and park model home); as long as we are still living together in the same household.

> This sheet being the third of three that we, as fiancees, have thus far completed. There is no Will at this time.

[¶5] Approximately six months after the decedent's death, the plaintiff brought this action asserting that: (1) the agreements signed by her and the

2

decedent are enforceable contracts entitling her to the property described in the agreements; (2) in the alternative, she is entitled to the property under theories of promissory estoppel, implied-in-fact contract, or, as to one particular vehicle, jointly purchased property; and (3) Allan Bald is liable for certain rents and profits received from the property. The defendants counterclaimed, seeking unpaid rent from the plaintiff.

[¶6] The plaintiff moved for summary judgment on her claim that the agreements executed by the plaintiff and the decedent are enforceable contracts. The defendants cross-moved for summary judgment on all of the plaintiff's claims. The trial court denied the plaintiff's motion, finding the agreements lacked adequate consideration. The trial court granted summary judgment in favor of the defendants. The trial court subsequently granted the plaintiff's motion for interlocutory appeal. The interlocutory appeal statement raises several questions, but we limit our analysis to the first question because our answer to it is dispositive: "Did the trial court err in ruling that the signed, written, and notarized agreements between the Plaintiff and Decedent are not enforceable for lack of adequate consideration?"

II

[¶7] On appeal, the plaintiff asserts that the trial court erred in granting summary judgment to the defendants on her contract claim. She argues that the court erroneously determined that the agreements were unenforceable as a matter of law. The plaintiff further asserts that the court erred in granting the defendants summary judgment on her other claims as genuine issues of material fact remain. The defendants maintain that the court's determinations were correct because the agreements at issue are not enforceable contracts and the record failed to support the plaintiff's other claims. Because we determine that the agreements are enforceable contracts, we need not address the merits of the plaintiff's alternative claims for promissory estoppel, implied contract, and jointly purchased property.

[¶8] A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits filed, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." RSA 491:8-a, III (2010). In reviewing rulings on cross-motions for summary judgment, we consider the evidence in the light most favorable to each party in its capacity as the nonmoving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law. Monadnock Reg'l Sch. Dist. v. Monadnock Dist. Educ. Ass'n., 173 N.H. 411, 416 (2020). We review the trial court's application of the law to the facts de novo. Greenwald v. Keating, 172 N.H. 292, 297 (2019).

3

[¶9] A valid, enforceable contract requires offer, acceptance, consideration, and a meeting of the minds.  Tessier v. Rockefeller, 162 N.H. 324, 339 (2011).  The defendants do not dispute that the written agreements here reflect offer, acceptance, and a meeting of the minds.  The parties disagree, however, on whether the agreements are supported by consideration.  The plaintiff argues that her continued cohabitation with the decedent is the consideration for the agreements.  The defendants argue the agreements are unsupported by consideration because: (1) the plaintiff and the decedent were already living together at the time the agreements were executed; (2) either party could have ended the relationship at any time; and (3) the agreements fail to recite any consideration.  We agree with the plaintiff.

[¶10] Consideration is essential to all contracts.  Chasan v. Village District of Eastman, 128 N.H. 807, 816 (1986) (citing Lang v. Johnson, 24 N.H. 302, 307 (1851)).  Consideration "is the foundation upon which all legal agreements and undertakings rest."  Lang, 24 N.H. at 307.  Further:

> Without a good consideration a contract is a mere nudum pactum, not binding in law, however it may be in conscience, and cannot be enforced.  The price that is paid, or the motive of the contract, which goes to form and make up the consideration, must also be in itself lawful, or else the contract is void.

Id.  Here, the parties clearly recited the exchange: certain property would transfer provided the plaintiff and the decedent were still living together at the time of the decedent's death.  On this point — whether continued cohabitation by adults is lawful consideration — we do not write on a blank slate.  We contemplated such agreements in Joan S. v. John S., 121 N.H. 96 (1981).  In that case, the parties lived together, unmarried, for about fifteen years, accumulating property and raising their children.  Id. at 97.  We rejected the plaintiff's request "to apply a divorce-like property settlement" between the parties as "[t]he right to a divorce is predicated upon the existence of a valid marriage between the parties."  Id. at 99.  We clarified that "[o]ur refusal to apply RSA [chapter] 458 to the dissolution of non-marital living arrangements does not, however, prevent equitable adjustment of the rights of the parties."  Id.  Although the plaintiff in Joan S. failed to adequately raise a contract theory, we observed that "a court will enforce an action in contract, if one can be shown to exist, to the extent that it is not founded upon the consideration of meretricious sexual relations."  Id. (citing Marvin v. Marvin, 557 P.2d 106, 110 (Cal. 1976)).  By their plain language, the agreements in this case were solely founded upon the plaintiff's continued cohabitation with the decedent.  As such, the agreements are of the sort contemplated by Joan S.  See id.; see also Marvin, 557 P.2d at 116 ("So long as the agreement does not rest upon illicit meretricious consideration, the parties may order their economic affairs as they choose, and no policy precludes the courts from enforcing such agreements.").

4

[¶11] The defendants argue that the agreements lacked consideration, in part, because the plaintiff and the decedent were already living together at the time the agreements were executed. Specifically, they argue that the plaintiff was not induced into living, or continuing to live, with the decedent because of the agreements. We disagree.

[¶12] Consideration is present if there is either a benefit to the promisor or a detriment to the promisee. Chisholm v. Ultima Nashua Indus. Corp., 150 N.H. 141, 145 (2003). "The law does not undertake to measure the adequacy of the consideration for a contract or agreement." Probate v. Adams, 49 N.H. 150, 154 (1869). "The slightest benefit conferred upon the one party, or the slightest loss or inconvenience sustained by the other, is sufficient." Id.

[¶13] The agreements meet this test. The plaintiff's continued cohabitation amounted to a benefit to the decedent, as promisor. It served as a benefit to the decedent because, as the agreements plainly reflect, he desired that the plaintiff continue to live with him. Thus, the agreements reflect a bargained-for exchange: that the decedent would leave certain property to the plaintiff if she continued to live with him until his death. See Panto v. Moore Business Forms, Inc., 130 N.H. 730, 740 (1988) (stating that a bargained-for exchange "means simply that the promisor must manifest an intent to induce a promise or performance and the promisee must manifest a corresponding intention").

[¶14] The defendants argue that the decedent made no promise as he was free to end the relationship at any time. We are unpersuaded. The defendants point to the Restatement of Contracts, which states: "Words of promise which by their terms make performance entirely optional with the 'promisor' do not constitute a promise." Restatement (Second) of Contracts § 77 cmt. (a), at 195 (1981). Here, the decedent's performance was not optional so long as the contracting parties lived together at the time of his death. That either party could defeat the condition of the agreements by ending the relationship prior to the decedent's death has no bearing on whether, if the condition were satisfied, the decedent was required to perform. Accordingly, the "words of promise" in the agreements did not make the decedent's performance optional such that he made no promise.

[¶15] Finally, the defendants correctly note that the agreements do not expressly recite any consideration. However, New Hampshire law does not require consideration to be recited for it to exist. See, e.g., Panto, 130 N.H. at 736 (proof of continued service by employee may demonstrate consideration for an employer's promise to pay benefits); Gilman v. County of Cheshire, 126 N.H. 445, 450 (1985) (employee's continued labor amounted to consideration sufficient to enforce modified employment terms calling for payments in lieu of accumulated sick leave). In this case, the consideration supporting the

5

agreements, although not specifically labeled, is nonetheless readily determined from the text of the agreements.

[¶16] We hold that the agreements are enforceable as a matter of law and, therefore, reverse the trial court's order denying summary judgment to the plaintiff and granting summary judgment to the defendants. We remand for further proceedings consistent with this opinion.

<u>Reversed and remanded</u>.

BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.